# CHARLES S. LEDVINKA

## vs.

## HOME INSURANCE COMPANY.

*Master and Servant—Automobile Instructor—Insurance—Conditional Vendee—Not Unconditional Owner—Theft Within Policy.*

That the seller of an automobile, as a part of the consideration for the purchase, furnished a man to teach the purchaser how to drive it; that the man gave the purchaser several lessons; and that the purchaser gave the man "tips," did not make the man an employee or servant of such purchaser.     p. 437

The purchaser of an article, under a contract of conditional sale by which the title is to remain in the vendor until payment of the unpaid balance of the purchase money, is not the "unconditional and sole owner" thereof, within a requirement of a policy of insurance.                    ' pp. 438, 439

That a chauffeur, to whom an automobile was entrusted by the owner, without any directions as to its disposition other than an order to return with it at a later hour on the same day, drove it into the country for his own pleasure, in the course of which drive it was wrecked, does not show that its loss was due to "theft, robbery or pilferage" within the meaning of an insurance policy, it not appearing that he acted with any expectation of personal gain, or that he intended permanently to convert the automobile to his use.     pp. 439-441

*Decided November 17th, 1921.*

Appeal from the Baltimore City Court (AMBLER, J.).

Action by Charles S. Ledvinka against the Home Insurance Company of New York. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Simon Silverberg,* for the appellant.

*W. Calvin Chesnut* and *Hilary W. Gans,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Charles S. Ledvinka, on December 19th, 1919, purchased from the Colonial Garage and Repair Company, of Baltimore, a second- hand automobile for eight hundred dollars, and certain additional equipment for two hundred dollars, of which sums he paid four hundred dollars in cash, and gave notes for the balance. The contract for the sale of the automobile contained, among others, this clause: "It is understood and agreed that title of ownership of car * * * does not pass to me until final cash payment is made."

After purchasing the car, Ledvinka took out an insurance policy from the Home Insurance Company of New York, the appellee in this case, insuring him to the extent of one thousand dollars against its loss through "theft, robbery or pilferage." This policy was issued upon the condition that it should be "null and void" if the assured's interest in the car were "other than unconditional and sole ownership," or if it were "encumbered by any lien or mortgage" except as stated in a warranty contained in the policy.

At the time the appellant bought the automobile, the vendor agreed to "give him a man to teach him how to drive it,'" and John C. Alderhardt, the chauffeur furnished by the company under that agreement, brought the car to appellant's home four or five times, and gave him lessons in driving it, and on one of these occasions the appellant directed Alderhardt to bring the automobile to his home on Sunday, January 11th, 1920, for another lesson. The chauffeur was to bring the automobile from the garage of the Colonial Garage and

Repair Company, where it had remained from the time appellant had purchased it from that company. The chauffeur came on that day at about ten o'clock in the morning and was with the plaintiff in the automobile for about two hours teaching him how to operate it. It was then agreed between them that the chauffeur should return with the car at two o'clock in the same afternoon, to give the appellant a final lesson. Alderhardt did not come at the hour named, and the appellant was later told that the car had been wrecked, and Alderhardt, the chauffeur, fatally injured, in an acciident on the Annapolis Road some time during that afternoon.

After he learned of the damage to his automobile, the plaintiff filed with the appellee a claim for the loss he had suffered, on the theory that the chauffeur had stolen the car, and that the loss was, therefore, covered by the policy of insurance. The insurance company refused to pay the claim, and the plaintiff then instituted this action in the Baltimore City Court to recover the amount he claimed to be due him under the policy. At the close of the plaintiff's case, the jury, under the direction of the court, returned a verdict for the defendant, and from the judgment entered on that verdict this appeal was taken.

The only question presented by the record for our consideration is whether, under the facts stated, the plaintiff was entitled to recover in that suit against the defendant.

There were set up three defences to the appellant's claim: (1) that the car had not been stolen at all; (2) that if stolen, the theft was committed by a person in the assured's employment; and (3) that at the time the policy was issued the appellant did not have the legal title to the automobile, and the policy was for that reason void, because the appellant had taken it upon the expressed condition that it should be "null and void" if his interest in the automobile were other than unconditional or sole ownership, or if it was, when the policy issued, or afterwards became, encumbered by any lien or mortgage, except as stated in the assured's warranty,

which warranty was that it was "fully paid for by him and was not mortgaged or otherwise encumbered," whereas in fact the legal title to it had been retained by the Colonial Garage and Repair Company to insure the payment of the balance of the purchase money due on it.

Because of its relation to the other questions, we will first consider the proposition that Alderhardt was in Ledvinka's employment. There is nothing in the record to sustain the contention that he was so employed. It is true that the proprietor of the company, from which Ledvinka bought the car, testified that Alderhardt was not in his employ on the day in question, but the company had sent him to Ledvinka in accordance with its undertaking to furnish him a chauffeur to teach him to operate the car, which undertaking was a part of the consideration for the purchase of the car. The mere fact that Ledvinka gave him "tips" did not make the chauffeur his employee any more than would the casual tipping of a railway porter by a passenger make the porter the passenger's employee. Alderhardt was entrusted with the car by the company, and by it sent to perform a promise it had made; that is, to teach the purchaser of the automobile how to drive it, and for the purposes of this case it must be assumed that Alderhardt was its agent and not in the service or employment of Ledvinka.

"Service" and "employment" are words commonly and constantly used "and therefore ought to be received as understood in common parlance" (20 *C. J.* 1245), and when so received are generally associated with the idea of selection and compensation. But neither of those elements can be found in the relation between Ledvinka and Alderhardt. Alderhardt was selected by the garage company and, if compensated at all, was compensated by it. The object of his employment was the instruction of Ledvinka, who neither selected nor compensated him for the employment. Alderhardt was not, therefore, either in the service or the employment of Ledvinka. *McCluskey* v. *Cromwell,* 11 N. Y. 593, 599.

Assuming then, under the circumstances of this case, that Alderhardt was not in the employment or service of the appellant, the remaining questions to be considered are whether the policy of insurance, upon which this action was brought, was a valid and subsisting contract at the time the loss, of which the appellant complains, occurred, and if so whether that loss was due to "theft, robbery or pilferage."

The uncontradicted, and indeed the only testimony in the case, shows that the appellant bought the automobile on December 11th, 1919, under a contract of conditional sale, under the terms of which the legal title to it was to remain in the vendor until the balance of the purchase money was paid. This balance consisted of four hundred dollars and was evidenced by four promissory notes each for one hundred dollars, payable in thirty, sixty, ninety and one hundred and twenty days after date. These payments he made as they became due. In the policy of insurance, the term of which was from December 31st, 1919, to December 31st, 1920, the assured agreed that the policy should be "null and void" if his interest in the property assured were other than "unconditional or sole ownership," or if it were encumbered by any lien or mortgage except as stated in "Warranty No. 5 or otherwise endorsed" on the policy. In "Warranty No. 5" it was stated that the automobile was "fully paid for by the assured" and was not mortgaged or otherwise encumbered except as follows—no exception. From the appellant's own testimony he paid the notes given for the instalments of the unpaid balance of the purchase money "as they matured." None of them matured, however, until after the insurance policy issued, and therefore at the time it issued Ledvinka was not the unconditional and sole owner of the car, because the vendor held the legal title to it to insure the payment of the balance of the purchase money. If the language of the policy has any meaning at all, and if the provisions of the contract are to be given any effect, in the absence of any testimony tending to show that the warranties and representations

as to the assured's interest in the car were made under circumstances from which it could be inferred that they were induced by fraud, surprise or mistake, it follows that the effect of the misrepresentations to which we have referred was to annul and avoid the policy. For while there is some conflict in the decisions elsewhere as to whether the purchaser of personal property under a conditional contract of sale is the sole and unconditional owner thereof (20 *L. R. A.* [N. S.] 779 note), there can be no question as to the rule in force in this State, since the decision in *Westchester Ins. Co.* v. *Weaver,* 70 Md. 542, in which this Court said: "The sale by Willig & Company to the plaintiff was a conditional sale, and the title did not vest in the plaintiff until all the conditions had been complied with, and he was not, as the policy expressly required him to be, the unconditional owner of it at the time of the insurance. The clause in the instrument of sale which requires the plaintiff to pay the full value, in case of the destruction by fire, does not affect the question. The terms of the policy required him to be the unconditional owner, at the time of the insurance, and this, it appears, he was not." And while there is some conflict in the decisions the weight of authority supports that view. *Bullard* v. *Globe & Rutgers Fire Ins. Co.,* 237 Mass. 34; *Springfield F. & M. Ins. Co.* v. *Chandlee,* 41 App. D. C. 209; 14 *R. C. L.,* page 1059; *Insurance Co.* v. *Erickson,* 7 Ann. Cases, 499.

But even if it could be assumed that the policy was in force at the time the appellant suffered the loss for which he seeks to recover in this case, the action could not be maintained because the record contains no evidence to support his contention that his loss was due to the "theft, robbery or pilferage" of the automobile referred to. The words "theft," "robbery" and "pilferage," all describe some form of larceny. "Theft" is a "popular term for larceny." *Bouvier's Law Dict.; Hochheimer's Crim. Law,* par. 355. "Robbery" is larceny from the person, accompanied by violence or by putting in fear (I *Leach,* 195; *Com.* v. *Humphries,* 7 Mass. 242).

While "pilferage" means stealing (*Becket* v. *Sterrett*, 4 Blackf. (Ind.) 499, 500) or petty larceny (*Bouvier's Law Dict.*). Larceny has been defined as the "fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of the owner without his consent." 2 *Wharton, Crim. Law* (11th ed.). It is essential to the crime of larceny that there be a fraudulent taking from the possession of another, without his consent. *Worthington* v. *State,* 58 Md. 403; *Canton Bank Co.* v. *Amer. Bond. Co.,* 111 Md. 45; *Williams* v. *Fidelity Co.,* 105 Md. 490.

Applying these principles to the facts before us, we cannot say that Alderhardt's action in driving the car on the Annapolis Road on the day in question amounted in law to larceny. His possession of it was that of a bailee and not that of a servant, and its possession had been entrusted to him both by the appellant and the garage company, and it does not appear that he committed any fraud in obtaining such possession, and, as the general rule is, that in order to convict of larceny under such circumstances, it is necessary to prove a "fraudulent intention on the part of the accused at the time of the bailment by which fraud he obtained such special possession," 2 *Wharton Cr. L.* (11th ed.), 1418, it follows that his act did not constitute larceny. When the appellant dismissed Alderhardt at twelve o'clock, he did not tell him to take the car back to the garage, but only told him to return with it at two o'clock in the afternoon. That is, he left it in Alderhardt's possession, without giving him any direction at all as to where the car was to be taken or what was to be done with it during that time, but left those matters to the discretion of the chauffeur. And while the chauffeur abused the confidence thus placed in him, and used the property entrusted to his care for his own pleasure, his conduct, while wrongful and reprehensible, did not amount in law to larceny, in the absence of any evidence tending to show an intention of stealing the car, and, while he acted in

a reckless and wanton disregard of the appellant's rights and interests, it does not appear that he did so with any expectation of personal gain, or that he intended to permanently convert the automobile to his use.

Under such circumstances, in our opinion, the appellant failed to show that the loss of which he complains was due to the "theft, robbery or pilferage" of the automobile. *Gunn* v. *Globe & Rutgers F. Ins. Co.,* 24 Ga. App. 615.

Finding no error in the rulings of the lower court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellee.*