JAMES LEROY TYLER *v.* STATE
OF MARYLAND

[No. 381B, September Term, 1967.]

*Decided September 19, 1968.*

The cause was argued before MURPHY, C.J., and MORTON, ORTH, and THOMPSON, JJ.

*Leonard R. Goldstein* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

James LeRoy Tyler, the appellant, appeals a conviction for robbery with a deadly weapon in a case tried before a jury in the Circuit Court for Prince George's County. He was sentenced to a term of ten years.

Rosemary Jackson testified that she was employed by High's Dairy Store in Suitland, Maryland on June 27, 1967, and that when she and a fellow employee, John Edward Ginger, started to close the store at about 11:00 P.M. Tyler, armed with an automatic pistol, entered the store and demanded money; that he took some money from the cash register in the front of the store, ordered Ginger to the rear where she was located and demanded they produce the balance of the money that was in the store. His request was complied with after the witness requested Ginger to give him the money. Tyler took and carried away the total sum of $175.

The indictment under which Tyler was tried contained seven counts: (1) robbery with a deadly weapon (2) assault with intent to rob with a deadly weapon (3) robbery (4) assault with intent to rob (5) assault and battery (6) larceny and (7) receiving stolen goods. After the State's case was concluded and in order to clarify the issues for the jury the State's Attorney entered a *nolle prosequi* as to all except the first and sixth counts of the indictment. The court granted a motion to acquit

as to the sixth count on the basis that the ownership of the stolen goods was not proven as required by *Sippio v. State,* 227 Md. 449, 177 A. 2d 261. The jury convicted under count one (robbery with a deadly weapon). Tyler first contends that since the counts on which a *nolle prosequi* were entered and the count on which the court granted a motion to acquit constituted lesser offenses which were necessarily part of the larger one of robbery, his conviction of robbery was improper because it, by reason of merger, constituted double jeopardy or *res judicata.* He relies on *Johnson v. State,* 238 Md. 528, 209 A. 2d 765 and *Price v. State,* 3 Md. App. 155, 238 A. 2d 275.

We considered, and rejected, this identical contention with reference to the counts on which a *nolle prosequi* was entered after the trial began in *Holtz v. State,* 1 Md. App. 358, 230 A. 2d 117. We held that where the State's Attorney takes this action to clarify the issues for the jury and a conviction of the greater crime follows at the same trial, double jeopardy and *res judicata* do not apply. We look to the substance of what occurred and not to mere form.

In *Price v. State, supra,* we applied the doctrine of merger to avoid multiple convictions at the same trial. The same rule does not apply where there is an acquittal of the lesser crime and a conviction of a greater crime at the same trial, or conversely. *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336. *Johnson v. State, supra,* makes clear that the doctrine applies to inconsistent verdicts of trial judges only where "the appellate court could have no confidence in the judgment of conviction when the judge, by his acquittal of the defendant of one crime appeared to have rejected the only evidence that would have supported his conviction of another." (209 A. 2d 773)

In the present case the trial judge made clear that his acquittal of the larceny charge was based solely on the lack of proof of ownership sufficient to support that charge. Proof of ownership is not required to support a robbery charge as we shall discuss in the next paragraph. There is no reason to lack confidence in the action of the trial judge in the present case. The proof of ownership was clearly insufficient to support the charge of larceny, but was quite adequate to support the charge of robbery.

Secondly, Tyler contends that his motion for acquittal of the robbery should have been granted, since the indictment alleged that the goods of which John Edward Ginger was robbed, belonged to Capitol Milk Producers Co-operative, Inc. and the ownership as alleged was not established. We considered and rejected similar contentions in *McMillan v. State,* 3 Md. App. 699, 240 A. 2d 765 and in *Harrison v. State,* 3 Md. App. 148, 238 A. 2d 153, 155 in which we said:

> "So in the instant case, if the evidence was sufficient to show, directly or by inference, that Core Marie Johnson was the lawful possessor of the moneys taken from her, the conviction was proper whether she or Savannah M. Johnson was alleged in the indictment to be the owner. Robbery is larceny from the person, accompanied by violence or putting in fear, *Ledvinka v. Home Ins. Co.,* 139 Md. 434, 439, 115 A. 596, 19 A. L. R. 167 and the appellant agrees that 'to constitute the crime of robbery, the property need not be taken from the owner. It may be taken from someone who had custody over the property and who had a legal interest or special property interest in the goods,' citing *Richardson v. State,* 221 Md. 85, 156 A. 2d 436. See also *Hadder v. State,* 238 Md. 341, 209 A. 2d 70; *Hackley v. State,* 237 Md. 566, 207 A. 2d 475; *Flannigan v. State,* 232 Md. 13, 191 A. 2d 591. He contends, however, that the evidence in the case before us is not sufficient to prove that Core Marie Johnson had such possession of the moneys taken from her . . . . We feel it apparent from the testimony that she was in charge of the store at the time of the robbery, had authorized access to the cash register in making sales of the store merchandise and had custody and control of and responsibility for the moneys in the register."

The evidence here showed that Ginger was an employee of the store with custody of the money and that it was he who handed the money over to the robber. No more is required; the contention is without merit.

Tyler's third contention is that since he did not have an attorney at the line-up, his identification at the trial was tainted and therefore not admissible.[1] He relies on *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. This objection was raised below prior to the identification by the witness, Rosemary Jackson, and a hearing on the issue was conducted out of the presence of the jury. She testified that on July 18, 1967, some three weeks after the robbery, police officers showed her pictures of seven Negro males, from which she picked Tyler as the robber. In a line-up conducted the next day she again identified Tyler as the robber. She observed him on October 5, 1967 in custody of the Deputy Sheriff on which date the trial was originally scheduled. She observed him in court again on October 11, 1967, the trial date, and again positively identified him as the robber. She also testified that during the robbery, Tyler stood within two feet of her in good lighting and that her courtroom identification was based upon her observation of him the night of the robbery saying specifically:

> "Q. Miss Jackson, is your identification of Mr. Tyler based upon anything other than your observation of him on the night of the robbery?
> "A. No, it is just that he was the guy that came into the store and then I looked at the pictures and he was in the picture, the same guy, and then when I looked at the line-up I studied the line-up very closely and he was the same guy in the line-up. That is all I can say.
> "Q. Is he the same guy here today?
> "A. Yes, he is the same guy here today."

The witness further testified:

> "A. Well, he just asked me to look at these photographs, because he had an idea who this person was.

---

1. At oral argument he abandoned a contention that the court erred in admitting evidence concerning the extrajudicial line-up. The abandonment was based upon the fact that evidence of the line-up was presented out of the presence of the jury.

And so I looked at the photographs and I picked out the one that was the one that was in the store that looked like him.

"Q. Is that what you told Northcutt, that he looked like him?

"A. Yes, I said I believe and I am pretty sure that was the one in the store. And I told him if I could see him, you know, in person, I could tell, you know, give him a sure.

"Q. Didn't you actually say to Northcutt that this looked more like him than any of the others, but you weren't sure?

"A. Well, I said it looked more like him than any of the others, yes.

"Q. But you weren't sure?

"A. No, I told him I wasn't sure until I could see his height and build and everything like this and more about his face.

"MR. DePAUL: Could the Court indulge me just a moment please?

"BY MR. DePAUL:

"Q. So then actually at that time there was some doubt in your mind as to whether or not the photograph was that of a man who robbed you?

"A. Well, actually there wasn't really no doubt in my mind because he looked like that guy.

"Q. But you didn't say this is the one, did you?

"A. No, not then because I wasn't told—

"Q. As a matter of fact, the language you used it looked more like him than any of the others, meaning it resembled him; is that right?

"A. That is right.

"Q. So by that the point is it is fair to say at that time you were not sure it was he?

"A. Yes, say for sure. I wanted to be extra sure and by being extra sure I mean I wanted to see the guy in person and look right face to face to him, like I did in the store, see."

A police officer testified that when the witness, Jackson, examined the photographs she stated that the picture of Tyler "looks more like the person than any of the others," and that when he had originally talked with her soon after the robbery she described him as being "a colored male, about 30 years of age, about five foot eight, 150 to 160 pounds, medium to light complected, with a medium mustache, dressed in brown trousers, brown and white short sleeve sport shirt, armed with a small caliber silverplated automatic with dark grips." On the witness stand Jackson stated that her report to the police was "I said he was probably in his late 30's, that he was about five-four, something like that, and weighed about 150 or maybe 140 and he had a pair of glasses on and had a brown shirt with yellow and white stripes going down the front of it." The latter was a more accurate description of Tyler. She also admitted that she had been shown the seven pictures just before entering the courtroom on October 11, 1967 and again picked Tyler as the robber.

Tyler testified that at the line-up Ginger could not identify him and that the police pointed him out to Ginger and to the witness Jackson. This was denied by both Jackson and by the police officer who testified. They both also stated that Ginger did identify Tyler at the line-up. For some reason not disclosed in the record Ginger was unavailable to testify at the trial.

On this testimony the trial judge found that the in-court identification was not tainted by any of the pretrial procedures and permitted the witness to identify Tyler as the robber.

In *United States v. Wade*, 388 U. S. 218, 87 S. Ct. 1926, 1939, 18 L. Ed. 2d 1149 the Supreme Court laid down the proper test to apply in cases such as this:

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States*, 371 U. S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441, '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Ma-

guire, Evidence of Guilt, 221 (1959). See also *Hoffa v. United States,* 385 U. S. 293, 309, 87 S. Ct. 408, 17 L. Ed. 2d 374. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

The facts set out above show that the trial judge considered all of the factors mentioned by the Supreme Court and found the in-court identification was not tainted by the improper lineup. We see no reason to disturb his ruling.

In his brief and in oral argument Tyler argues that the seven pictures were of so dissimilar people as to be unfair and that the line-up was composed of people so dissimilar as to be unfair. The trial judge found contrary to these contentions and we have examined the seven pictures and the picture of the line-up and quite agree with the trial judge. With reference to the police practice of showing pictures of suspects to victims of crime see *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the

method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno*, 388 U. S. 293, 301-302, 87 S. Ct. 1967, 1972-1973, and with decisions of other courts on the question of identification by photograph."

Applying this test we see no error. Compare *Rath v. State*, 3 Md. App. 721, 240 A. 2d 777.

Finally, Tyler objects to the failure of the court to instruct the jury that it was essential that the state prove the ownership of the money as alleged in the indictment. This issue was disposed of above in our discussion of ownership. An ownership allegation in an indictment for robbery is surplusage.

*Judgment affirmed.*