## HAYES *v.* STATE

[No. 4, October Term, 1956.]

112

*Decided November 5, 1956.*

The cause was argued before BRUNE, C. J., COLLINS, HENDERSON and HAMMOND, JJ., and HENDERSON, J., Chief Judge of the Fourth Judicial Circuit, specially assigned.

*Morris Lee Kaplan,* with whom were *Harry I. Kaplan* and *Louis L. Horowitts* on the brief, for appellant.

*James H. Norris, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, David Kauffman, Assistant Attorney General, Anselm Sodaro, State's Attorney for Baltimore City* and *James W. Murphy, Assistant State's Attorney for Baltimore City* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment and sentence of twenty years in the Maryland Penitentiary from January 7, 1956, after the appellant had been convicted by Judge Carter, sitting without a jury in the Criminal Court of Baltimore, on the first count of an indictment charging attempted robbery with a dangerous and deadly weapon. The appellant contends that the verdict of the trial court was clearly wrong, because the evidence showed that the pistol used in the attempted robbery was unloaded, and it is contended that an unloaded pistol is not a dangerous or deadly weapon.

The State produced testimony to show that the appellant, with an accomplice who has not been apprehended, came to the filling station operated by the witness, Grice, "stuck a gun" in his ribs and said: "This is it, give me your money."

Grice testified: "I asked him if it was a big joke he was trying to pull on me, and he pulled the hammer back on the gun and shoved it a little tighter and said, 'Does this look like a joke?' * * * When he throwed the hammer back on the gun, I stuck my thumb in the gun and blocked the gun and taken the gun away from him." The hammer hit his thumb. He did not examine the gun and did not know whether it was loaded or not. He twisted the man's arm and held him until the police came, in response to a call from his helper. The other man ran away.

Officer Ledon testified that Grice was struggling with the appellant when he arrived on the scene. He examined the gun Grice had taken from the appellant and it was not loaded. In a statement which the appellant gave to the police, offered in evidence by the State, the appellant said the gun belonged to his companion. "I took the gun away from him at the bar when he was flashing it around. We both agreed * * * to hold up the gas station." He admitted saying to the attendant "this is a holdup" and pointing the gun at him. The appellant did not take the stand, but after verdict and before sentence he told the court: "* * * just at the time that happened I was pretty well drunk * * * I mean I know that the gun was not loaded, I knew it was not loaded myself."

The common law crime of robbery is not defined by statute in Maryland, but the penalty is fixed at from three to ten years by Code (1951), Art. 27, sec. 573. Code (1951), Art. 27, sec. 574A, as enacted by Ch. 457, Acts of 1927, provides: "Every person convicted of the crime of robbery or attempt to rob with a dangerous or deadly weapon or accessory thereto, shall * * * be sentenced to imprisonment in the Maryland Penitentiary for not more than twenty years."

The question whether an unloaded pistol is a dangerous or deadly weapon within the meaning of this statute has not been previously passed upon by this Court. In *Crawford v. State*, 174 Md. 175, 179, the question was whether a previous acquittal by a magistrate of "assaulting and shooting * * * with a pistol" was *res judicata* in a subsequent indictment for murder. It was held that the charge before the magistrate was, in effect, a charge of assault with intent to murder, of

which the magistrate had no jurisdiction, so that his finding had no legal significance. It was conceded in that case that the pistol was loaded and discharged. But the Court quoted a statement from *United States v. Williams,* 2 F. 61, 64 (C. C. Ore.), that "Whether a particular weapon is a deadly or dangerous one is generally a question of law. Sometimes, owing to the equivocal character of the instrument—as a belaying pin—or the manner and circumstances of its use, the question becomes one of law and fact, to be determined by the jury under the direction of the court. But where it is practicable for the court to declare a particular weapon dangerous or not, it is its duty to do so. A dangerous weapon is one likely to produce death or great bodily injury. A loaded pistol is not only a dangerous but a deadly weapon. The prime purpose of its construction and use is to endanger and destroy life. This is a fact of such general notoriety that the court must take notice of it."

The question has been passed upon in the courts of many other states. In California the statute provides that all robbery perpetrated by a person armed with a dangerous or deadly weapon is robbery in the first degree. In *People v. Egan,* 246 P. 337, 339 (Cal. App.), it was held that an unloaded pistol is a dangerous weapon within the meaning of the statute, the court stating that "It is a matter of common knowledge that in committing robbery pistols are frequently used as bludgeons rather than as firearms." The holding has been followed in later cases, notably *People v. Freeman,* 260 P. 826 (Cal. App.) and *People v. Ash,* 199 P. 2d 711 (Cal. App.), where it is pointed out that it is only the potentiality of its use to effectuate the implied threat of injury that makes any weapon dangerous. An unloaded pistol may not only be used as a bludgeon, but it can be loaded under some circumstances within a matter of seconds.

The courts passing on the point have sometimes drawn a distinction between assault with a dangerous weapon and robbery or attempted robbery with a dangerous weapon. In the latter case, it is almost uniformly held that the offense is independent of the assault and may as well be accomplished by intimidation as by force. Hence, it is held to be immaterial

whether the pistol used to effect the taking or attempted taking is loaded or unloaded. *State v. Deso,* 1 A. 2d 710 (Vt.); *McNamara v. People,* 48 P. 541 (Colo.); *Commonwealth v. Nickologines,* 76 N. E. 2d 649 (Mass.); *Moore v. Commonwealth,* 86 S. W. 2d 145 (Ky.); *Cittadino v. State,* 24 So. 2d 93 (Miss.). See also Note 74 *A. L. R.* 1206.

This rule has been followed in every state where the question has arisen, except in Wisconsin. In *Lipscomb v. State,* 109 N. W. 986 (Wis.), it was held that an unloaded pistol was not a dangerous weapon, under a robbery statute, although the court recognized that a *prima facie* case was made out by proof of the pointing of a pistol with a threat to fire. It may be noted that the statute in that case specified assault as an element of the crime, as well as intent, if resisted, to kill or maim. The holding was followed with regret in the later case of *Luitze v. State,* 234 N. W. 382 (Wis.), with the recommendation that the rule be changed by the legislature. Subsequently the statute was amended by interpolating the words "loaded or unloaded". Wis. Stat. (1953), Title XXXII, Chapter 340.39.

While there is some conflict in the authorities as to whether, in the case of an assault, there must be an actual present ability to commit a battery, the better view seems to be that an apparent ability is enough. See *Restatement, Torts,* § 33 and *Prosser, Torts,* p. 52. Since the right protected is that of the person attacked, the secret intention of the wrongdoer not to perform the threatened act, or even his undisclosed inability to perform it, is not a legal excuse in a civil action. The criminal law is also designed to protect rights of the general public and the individual assailed, not merely to fix the moral guilt of the assailant. See *Sayre, Criminal Attempts,* 41 Harv. L. R. 821, 849. The Maryland statute, unlike the Wisconsin statute, does not mention assault or intent to kill or maim, but predicates the greater penalty attached to the use of a dangerous or deadly weapon upon the means employed in the intimidation. So long as there is an intent to rob by that means, it is unnecessary to find an intent or ability to execute the implied threat in the event of resistance. Cf. *People v. Hildebrand,* 139 N. E. 107, 111 (Ill.) and *State v.*

*Deso, supra.* Nor need it be shown that the person assailed was actually put in fear, if the means employed are calculated to instill fear in the heart or mind of a reasonable man. *Haley v. Commonwealth,* 276 S. W. 519 (Ky.) ; *Steward v. People,* 79 N. E. 636 (Ill.).

The appellant argues that it is necessary to show that the weapon is deadly as well as dangerous, and that an unloaded weapon cannot be deadly when it is incapable of being discharged. We think it is sufficient under the statute to show that the weapon is either dangerous or deadly, for the words are used in the alternative. The fact that the indictment, following the usual practice and the form set out in Code (1951), Art. 27, sec. 575, as enacted by Ch. 84, Acts of 1945, uses the conjunctive is not controlling. See *Bonneville v. State,* 206 Md. 302, 307.

In accordance with what we conceive to be the great weight of authority, we hold that the pistol used in this case was at least a dangerous weapon, and that the trial court was not clearly wrong in finding the appellant guilty on the first count of the indictment. Since the sentence imposed was not in excess of the maximum set by the statute, we have no authority to review it.

*Judgment affirmed, with costs.*