821 A.2d 389

Leon COLES, Jr.

v.

STATE of Maryland.

No. 51, Sept. Term, 2002.

Court of Appeals of Maryland.

April 10, 2003.

---

**116**

Jennifer P. Lyman, Washington, DC, for petitioner.

Edward J. Kelley, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

Petitioner Leon Coles, Jr. (hereinafter "Coles") entered the same bank on three separate occasions, walked up to a teller, and presented her with a note demanding money. After each teller complied, Coles left the bank with the money. Based on this conduct, the Circuit Court for Baltimore County, sitting without a jury, convicted him of three counts of robbery. Coles challenges the robbery convictions on the basis that there was insufficient evidence to prove that he stole the money by instilling fear in the tellers. Because a rational fact finder could conclude, under the circumstances of this case, that there was sufficient evidence to satisfy the intimidation or "putting in fear" element of robbery, we shall affirm the convictions.

## I. Background

On Saturday, January 23, 1999, at about 10:00 a.m., Coles, wearing a baseball hat, a jacket or bulky shirt, and a scarf around his neck, entered the Dundalk branch of First National Bank of Maryland (hereinafter "First National"), approached teller Anna Estes, and gave her a bag and a note that she recalled as stating, "[P]ut some money in the bag." The note also ordered her "not to hit an alarm, not to let anybody know," and to return the note. Ms. Estes, who had thirty years of experience as a teller, "tried to talk him out of it" and "took [her] elbow and pushed the note to the floor." Ms. Estes then placed $120, comprised of six twenty-dollar bills, into the bag, closed it, and handed it to Coles. Coles opened the bag, looked inside, and said, "Where's the note?" Ms Estes responded, "I don't know," whereupon Coles "looked at [her]," and warned, "Well, you better find it." Ms. Estes complied. The incident with Coles made Ms. Estes "a little nervous" and concerned "because there were other people in the bank" and because "you never know what could happen" in such a situation.

On Saturday, November 25, 2000, at approximately 10:00 a.m., Coles walked into the same branch of the bank, the name of which had changed from First National to Allfirst. Coles approached teller Janice Hall, who "welcomed him to Allfirst." Standing silent, Coles handed her a money market withdrawal form that had not been filled out. Ms. Hall "immediately felt something was bad." She turned the form over, and on the back was written, she recalled, "Put the money in the bag, no bait money, and no one will get hurt." Ms. Hall's "heart started beating really fast, and [she] got very nervous." Coles then put a bag on the counter, into which Ms. Hall placed "about $1,545." Ms. Hall tried to "push the note over," but Coles "put his hand over" and said, "Give me back [the note]." She did so "as quickly as [she] could." Coles took the bag of money and left the bank. Ms. Hall related that the incident "was the scariest moment of [her] life."

About two weeks later, on December 9, 2000, Coles entered the same branch of Allfirst bank, walked over to a counter where he picked up some forms, and got in line to speak to a teller, Bernice Swann. Ms. Swann was "a little suspicious about what [Coles] was doing" because Coles was "writing as he was standing in line." Ms. Swann's suspicions were confirmed when Coles handed her a bag and a note, which was written on the back of a retail account transfer form. The note commanded, "Put all the money in the bag no alarms thank you." Ms. Swann complied by placing $1,070 into the bag, because from her side of the teller counter, "you can't see a person," and she therefore "had no idea what [Coles] had." Indeed, a photograph from the bank's security camera entered into evidence shows Coles wearing long pants, a jacket, knit cap, and dark sunglasses. Moreover, there were "other people in the bank, so you comply. You do what you're supposed to do." After Ms. Swann placed the money in the bag, Coles left the bank. During the incident, he never said anything to Ms. Swann and did not ask her to return the note.

On December 16, 2000, police arrested Coles based upon information provided by his girlfriend that he had been involved in the three bank robberies. He later was charged in a nine-count criminal information filed in the Circuit Court for Baltimore County. The first three counts concerned the January 23, 1999 bank incident, charging Coles with robbery and second degree assault[1] of Anna Estes, and misdemeanor

---

1. Maryland Code, Art. 27 § 12(b)(1957, 1996 Repl.Vol.), states, "Except as otherwise provided in this subheading, 'assault' means the offenses of assault, battery, and assault and battery, which terms retain their judicially determined meanings." Code. Art. 27 § 12A prohibits second degree assault and proscribes penalties for the crime. The statute provides:

 (a) *General Prohibition.*—A person may not commit an assault.
 (b) *Violation; penalties.*—A person who violates this section is guilty of the misdemeanor of assault in the second degree and on conviction is subject to a fine of not more than $2,500 or imprisonment for not more than 10 years or both.

 We note that the incident at the bank on January 23, 1999 was governed by Code, Art. 27 §§ 12 and 12A as they existed in the 1996 Replacement Volume cited above. The two subsequent incidents,

theft.[2] Counts four through six involved the November 25, 2000 bank incident, charging robbery and second degree assault of Janice Hall, and felony theft.[3] Counts seven through nine covered the December 9, 2000 bank incident, charging robbery and second degree assault of Bernice Swann and felony theft.

At the conclusion of a pretrial motions hearing on June 6, 2001, Coles waived his right to a jury trial. Thereafter, on June 7, 2001, the Honorable Lawrence R. Daniels of the Circuit Court for Baltimore County heard testimony from the three tellers, and reviewed documentary evidence, including two security camera photographs and the note given to Ms. Swann on December 9, 2000.

At the close of the State's case, Coles moved for judgment of acquittal, arguing, among other things, that the State had failed to prove sufficient facts to meet the intimidation element of robbery. After the Circuit Court denied Coles's motion, Coles testified that he was the individual who stood "in front of" the tellers on January 23, 1999, November 25, 2000, and December 9, 2000. Coles maintained, however, that he was physically and mentally abused by his girlfriend and was,

which occurred on November 25, 2000 and December 9, 2000, were governed by the 2000 Supplement to the 1996 Replacement Volume, in which there were no substantive changes in Sections 12 and 12A.

2. Maryland Code, Art. 27 § 342(f)(2) (1957, 1996 Repl.Vol.), states in part:

A person convicted of theft where the property or services that was the subject of the theft has a value of less than $300 is guilty of a misdemeanor and shall restore the property taken to the owner or pay him the value of the property or services, and be fined not more than $500, or be imprisoned for not more than 18 months, or be both fined and imprisoned in the discretion of court. . . .

3. Maryland Code, Art. 27 § 342(f)(1) (1957, 1996 Repl.Vol., 2000 Supp.), states:

A person convicted of theft where the property or services that was the subject of the theft has a value of $300 or greater is guilty of a felony and shall restore the property taken to the owner or pay him the value of the property or services, and be fined not more that $1,000, or be imprisoned for not more than 15 years, or be both fined and imprisoned in the discretion of the court.

therefore, acting under duress. At the close of his case, Coles renewed his motion for judgment of acquittal, which was denied by the Circuit Court.

Judge Daniels, in adjudicating Coles's guilt stated: "His confession admits that he committed these offenses, and therefore, the Court finds him guilty as charged of the three bank robberies. With regard to the lesser-included offenses of assault and theft, they merge into the robberies for sentencing purposes." Judge Daniels then sentenced Coles:

> [O]n Count 1, the sentence of the Court is ten years to the Department of Corrections, that sentence being imposed under Article 27, Section 643[4] being a minimum mandatory sentence. As to the second robbery count, which is Count 4, the robbery of Janice Hall, the Court imposes a consecutive sentence of ten years to the Department of Corrections.

Judge Daniels further declared:

> On the third robbery count which is Count 7, the Court imposes a consecutive sentence of ten years. The Court will suspend nine of those 10 years, so the total time to be served is 21 years. When you get out of jail, you'll be on five years' supervised probation, with the other nine years hanging over your head.

---

**4.** Pursuant to Maryland Rule 4–245, the State filed notice of intent to proceed against Coles as a subsequent offender in order to obtain an enhanced sentence under Maryland Code, Art. 27 § 643B(d)(1957, 1996 Repl Vol., 2000 Supp.). Maryland Rule 4–245 requires, among other things, that the State's Attorney provide notice of an alleged prior conviction before a court may sentence a defendant as a subsequent offender.

Maryland Code, Art. 27 § 643B(d) provides:

*Second conviction of crime of violence.*—Except as provided in subsection (g) of this section, any person who has been convicted on a prior occasion of a crime of violence, including a conviction for an offense committed before October 1, 1994, and has served a term of confinement in a correctional institution for that conviction shall be sentenced, on being convicted a second time of a crime of violence committed on or after October 1, 1994, to imprisonment for the term allowed by law, but, in any event, not less than 10 years. The court may not suspend all or part of the mandatory 10–year sentence required under this subsection.

Coles conceded that he was convicted of armed robbery in 1991.

Coles appealed to the Court of Special Appeals, which affirmed in an unreported opinion. We granted certiorari, *Coles v. State*, 370 Md. 268, 805 A.2d 265 (2002), to address the following issues, which we have rephrased: [5]

I. Whether the evidence in the instant case was sufficient to support Coles's convictions for three counts of robbery.

II. Whether the evidence was sufficient to support Cole's convictions for three counts of second degree assault.

III. Whether the Circuit Court failed to pronounce a specific verdict on the counts of second degree assault, misdemeanor theft, and felony theft, and if so, whether that failure required an acquittal on those counts.

We hold that under the circumstances of this case, the evidence was sufficient for a fact finder to conclude beyond a reasonable doubt that Coles was guilty of three counts of robbery. In light of our holding, we need not, and do not, address Coles's second and third contentions.

## II. Standard of Review

■ The standard for determining whether evidence was sufficient to support a criminal conviction is "whether any rational trier of fact could have found the essential elements of the crime[ ] beyond a reasonable doubt." *Moye v. State*, 369 Md. 2, 12, 796 A.2d 821, 827 (2002) (citing *State v. Albrecht*, 336 Md. 475, 478–79, 649 A.2d 336, 337 (1994)). In applying that standard, we "view the evidence in the light most favor-

---

**5.** Coles phrased the questions presented in his petition for certiorari as follows:

I. Whether presenting a note requesting money, without other threatening conduct, satisfies the constructive force element of robbery if it takes place in a bank?

II. Whether presenting a note requesting money to a bank teller, without other threatening conduct, supports an inference of specific intent to frighten, as required for assault?

III. Whether, at the conclusion of a trial on the merits, a trial court's failure to pronounce verdicts on independent counts contained in a multi-count criminal information operates as an acquittal as to those counts?

able to the prosecution" and give "due regard to the [fact finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." *Id.* (quoting *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675, 685 (1997)). We do not, however, "undertake a review of the record that would amount to a retrial of the case." *Winder v. State,* 362 Md. 275, 325, 765 A.2d 97. 362 Md. 275, 765 A.2d 97, 124 (2001). Indeed, our task is not to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt. *State v. Pagotto,* 361 Md. 528, 534, 762 A.2d 97, 100 (2000). Rather, our review is limited to determining whether "*any* rational trier of fact" could have made that determination. *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979)).

## III. Discussion

When Coles stole $120 from Ms. Estes at the Dundalk branch of First National Bank on January 23, 1999, robbery, a common law crime, had a statutorily prescribed penalty including "imprisonment for not more than 15 years." Maryland Code, Art. 27 § 486 (1957, 1996 Repl.Vol.); [6] By the time Coles stole money from Ms. Hall and Ms. Swann at the same branch of Allfirst on November 25, 2000 and December 9, 2000, the Maryland Legislature had codified the crime of robbery by repealing former Section 486 and replacing it with a revised Section 486.[7] *See* Laws of Maryland 2000, Ch. 288

---

6. The 1996 version of Section 486 stated:

 Every person convicted of the crime of robbery or attempt to rob, or as accessory thereto before the fact, is guilty of a felony, shall restore the thing robbed or taken to the owner, or shall pay to him the full value thereof, and be sentenced to imprisonment for not more than 15 years.

7. The 200 version of Section 486 stated in part:

 (b) Proof of intent required; obtaining services of another by force.— (1) Robbery retains its judicially determined meaning, except that a robbery conviction requires proof of intent to deprive another of property; or (2) Robbery includes obtaining the service of another by force or threat of force.

§ 1. The revised Section 486 retains robbery's judicially determined meaning, and adds, "obtaining the service of another by force or threat of force." Md.Code, Art. 27 § 486 (1957, 1996 Repl.Vol., 2000 Supp.)

The Committee to Revise Article 27,[8] in the Note annotating Art. 27, § 486, identified the "judicially determined meaning" of robbery referred to in that Section as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear," *see Darby v. State,* 3 Md.App. 407, 413, 239 A.2d 584, 588, *cert. denied,* 251 Md. 748 (1968); *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378, 380–81 (1973), and as "larceny from the person, accompanied by violence or putting in fear." *See Tyler v. State,* 5 Md.App. 158, 162, 245 A.2d 592, 595 (1968), *cert. denied,* 252 Md. 733 (1969). Finally, the Note observed that "[u]nder the common law, robbery is a specific intent crime that requires intent to permanently deprive the owner of property." *See Gover,* 267 Md. at 606, 298 A.2d at 381; *Hadder v. State,* 238 Md. 341, 355, 209 A.2d 70, 78 (1965).

■ The hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation. *Spitzinger v. State,* 340 Md. 114, 121, 665 A.2d 685, 688 (1995)("Robbery requires a taking of property of any value whatsoever which is accomplished by violence or putting in fear.") Former Chief Judge Robert Murphy, writing for the Court in *West v. State,* explained that the distinction between robbery and theft, based on the presence of force or threat of force, "has ancient origins in the common law." 312 Md. 197, 203, 539 A.2d 231,

---

(c) Prohibition.—A person may not commit or attempt to commit a robbery.

(d) Violation; penalty.—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years.

**8.** "Unlike Code revision bills, which make only stylistic revisions to the Code, bills emanating from recommendations from the Article 27 Committee are usually substantive in nature." *Boffen v. State,* 372 Md. 724, 733, n. 4, 816 A.2d 88, 93, n. 4 (2003).

233 (1988). The distinction was described in William Hawkins' 1724 *Treatise of the Pleas of the Crown*, in the chapter entitled "Of Robbery":

> Sect. 2, Larceny from the Person of a Man either puts him in Fear, and then it is called Robbery; or does not put him in Fear, and then it is called barely, Larceny from the person. Sect. 3. Robbery is a felonious and violent Taking away from the Person of another, Goods or Money to any Value, putting him in Fear.

*Id.* at 203, 539 A.2d at 233. As evidenced by at least one authority, Maryland, as early as 1826, adhered to the ancient common law distinction. John Latrobe, in *Justice's Practice under the Laws of Maryland*, published in 1826, stated in Section 1252:

> Open and violent larceny from the person, or *robbery*, is the felonious and forcible taking from the person of another, of goods or money to any value, by violence, or putting him in fear. The putting in fear distinguishes it from other larcenies. 4 Blac. Comm. 242.

*Id.* at 203, 539 A.2d at 233–34.

In 1776 Maryland adopted its first Constitution, which provided in its Declaration of Rights that the "inhabitants of Maryland are entitled to the Common Law of England ... subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State." This provision remained in all subsequent Constitutions of Maryland. *Conklin v. Schillinger*, 255 Md. 50, 58, 257 A.2d 187, 191 (1969). Adhering to that Constitutional mandate, our decisions have consistently recognized the common law distinction between theft and robbery based on the presence of force or threat of force. *See, e.g., Ledvinka v. Home Ins. Co.*, 139 Md. 434, 439, 115 A. 596, 598 (1921)("'Robbery' is larceny from the person, accompanied by violence or by putting in fear...."); *Lee v. State*, 238 Md. 224, 208 A.2d 375, 376 (1965)(same); *West*, 312 Md. at 202, 539 A.2d at 233 (defining robbery, in part, as "larceny from the person, accompanied by violence or putting in fear"); *Bowman v. State*, 314 Md. 725, 730, 552 A.2d 1303,

1304 (1989)(same); *Spitzinger,* 340 Md. at 123 n. 2, 665 A.2d at 689 n. 2 (same); *Ball v. State,* 347 Md. 156, 182, 699 A.2d 1170, 1183 (1997)(same). The October 1, 2000 codification of the crime of robbery did not modify the common law meaning of the offense, other than by declaring that: "(1) [A] robbery conviction requires proof of intent to deprive another of property; or (2) Robbery includes obtaining the service of another by force or threat of force." Md.Code, Art. 27 § 486(b)(1) and (2)(1957, 1996 Repl.Vol., 2000 Supp.).

In *West,* we addressed "the degree of violence or putting in fear that is requisite" for a robbery conviction. 312 Md. at 203, 539 A.2d at 234. The victim in that case was leaving a drug store in Baltimore City when "a man just snatched [the victim's] purse from [her] hand and . . . ran." *Id.* at 199, 539 A.2d at 232. The victim did not notice that her purse was gone until after the snatcher began to run from her. *Id.* We concluded that the evidence was not sufficient to prove that the purse was taken with violence, or that the victim was put in fear. *Id.* at 207, 539 A.2d at 235. In so doing, we adopted the view that "the mere snatching or sudden taking away of the property from the person of another does not constitute sufficient force, violence, or putting in fear to support a robbery conviction." *Id.* at 206, 539 A.2d at 235. We then reasoned that the victim was not even "aware she had been dispossessed of the purse until she saw the purse snatcher running from her." *Id.* at 207, 539 A.2d at 235.

Actual force is not at issue in the instant case; rather, the question is whether there was sufficient evidence of intimidation, or placing in fear, to support Coles's convictions for robbery. In support of his contention that the evidence was insufficient, Coles claims that the "assault component" of robbery was not proven beyond a reasonable doubt because there was no evidence that he "specifically intended to frighten the tellers," that he threatened them with "a specific and immediate battery," or that he had an "apparent ability to carry out" such a threat. Coles claims that our decision in *Dixon v. State,* 302 Md. 447, 488 A.2d 962 (1985), illustrates

the requisite amount and quality of evidence necessary to prove those elements of robbery and claims that the evidence in the instant case falls short of that standard. Coles's contentions are without merit.

In *Dixon*, we stated that when "intimidation or putting in fear" is the "gravamen of the action," the following "test" is to be applied in determining the sufficiency of the evidence:

> [A]ny attempt to apply the least force to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention.

*Id.* at 458–59, 488 A.2d at 967 (quoting *Lyles v. State*, 10 Md.App. 265, 267, 269 A.2d 178, 179 (1970)). The defendant in *Dixon* challenged the sufficiency of the evidence to support his conviction for assault with intent to rob.[9] *Id.* at 450, 488 A.2d at 963. A female cashier was in her booth alone at a gas station in Baltimore City one evening when Dixon approached and failed to respond to inquiries from the cashier. *Id.* at 451–52, 488 A.2d at 963–64. The cashier "thought something was going on" because Dixon had a "cold, hard look . . . in his eyes" and was concerned because Dixon had a newspaper folded underneath his right arm, which led her to believe that he had a weapon, although she never saw a weapon. *Id.* at 452–53, 488 A.2d at 964–65. Dixon placed a note into the drawer that received customer items, which read, "I want all your money and hurry." *Id.* at 452, 488 A.2d at 964. The cashier pushed an alarm, dropped to the floor, and waited for the police to come. *Id.* at 452, 488 A.2d at 964. Dixon fled without any money. *Id.*

To gauge whether proof of intention to inflict a battery is governed by a subjective standard, i.e. from the viewpoint of

---

**9.** In *Dixon* we stated, "The essential elements of assault with intent to rob are these: 1. An assault on the victim, 2. By the accused, 3. With the intent to rob." 302 Md. at 451, 488 A.2d at 963.

the teller regarding his or her fear, or by an objective standard, i.e. from the circumstances of the robbery, and to determine whether the display of a weapon is necessary to show intimidation or putting in fear, we reviewed cases decided by the federal courts under 18 U.S.C. § 2113(a). We considered those cases to be "pertinent to our [ ] inquiry" because "[t]he gravamen of the action [in the federal cases], as [in *Dixon*], [was] whether intimidation [had] been shown." *Id.* at 459, 488 A.2d at 967–68. The federal cases upon which we relied, identified the dispositive standard as an objective one, which does not require a showing of actual fear and indicated that the actual display of a weapon is not necessary.[10] *Id.* at 459–63, 488 A.2d at 967–70 (discussing *United States v. Baker*, 129 F.Supp. 684, 686 (S.D.Cal.1955)(finding defendant guilty of attempted bank robbery, reasoning that "defendant intended to get money from the teller by intimidation" when defendant, without displaying weapon, gave teller note stating, "Please check all, into this sack, Thank you ECB"); *United States v. Brown*, 412 F.2d 381 (8th Cir.1969)(affirming conviction for bank robbery when teller was presented with demand note without display of a weapon, reasoning that the "overt act of demanding money accompanied by a threatening gesture of any type intended to intimidate could reasonably be viewed as ... evidence of ... attempted robbery"); *United States v. Jacquillon*, 469 F.2d 380 (5th Cir.1972)(holding that display of weapon and proof of actual fear are not necessary; rather, fear "may be inferred from conduct, words, or circumstances reasonably calculated to produce fear," and the presentation of threatening demand note at a bank is clearly intended to induce fear); *United States v. Alsop*, 479 F.2d 65, 67 n. 4, (9th Cir.1973)(declaring that "[t]he determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions" and defining "intimidation"

---

**10.** We also referred to our decision in *Hayes v. State*, 211 Md. 111, 115, 126 A.2d 576, 578 (1956), in which we declared, "Nor need it be shown that the person assailed was actually put in fear, if the means employed are calculated to instill fear in the heart or mind of a reasonable man." *Dixon*, 302 Md. at 461 n. 8, 488 A.2d at 969 n. 8.

as "willfully [taking] or [attempting] to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm"); *United States v. Robinson,* 527 F.2d 1170 (6th Cir. 1975) (holding that a jury was justified in finding intimidation, as a reasonable person "in the teller's position could ... infer an implicit threat" and could be in "fear of bodily harm" when a nervous defendant, in leather coat that could conceal weapon, demands, "Give me all your money," and presents a bag); *United States v. Harris,* 530 F.2d 576, 579 (4th Cir.1976)(holding that a jury could properly conclude defendant's conduct was reasonably calculated to produce fear when defendant presented teller with note stating, "This is a hold up," and "placed his hand in such a manner that [the teller] assumed [the defendant] had a weapon"); *United States v. Amos,* 566 F.2d 899 (4th Cir.1977)(holding that defendant's hand in pocket and demand for money proved intimidation); *United States v. Slater,* 692 F.2d 107 (10th Cir.1982)(holding that "[a] jury could conclude that [the defendant] intended and relied" upon fear to steal money when defendant "unhesitatingly entered the area occupied by [bank] tellers and seized money from their cash drawers"; further, noting that "expectation of injury was reasonable in the context of an incident of this kind where a weapon and a willingness to use it are not uncommon."))

In light of this authority, we stated that it was "crystal clear" that "possession of an undisclosed weapon may be inferred from the surrounding facts and circumstances." *Id.* at 463, 488 A.2d at 970. We then held that the trial court was not clearly erroneous in convicting Dixon of assault with intent to rob. *Id.* at 464, 488 A.2d at 970. In so doing, we paid particular note to the fact the defendant had a " 'cold, hard look' in his eyes," that he approached the lone cashier at night and gave her a previously written demand note, that he was carrying a newspaper in a manner that made the cashier think that Dixon had a weapon, and that the cashier hit an alarm and dropped to the floor, whereupon Dixon fled. *Id.*

Coles, however, contends that *Dixon* mandates a reversal of his robbery convictions because, unlike *Dixon,* "Coles's actions

were not designed to suggest to the tellers that he possessed a weapon or was prepared to use actual force." In addition, Coles asserts that the "surrounding circumstances" of the instant case, "daylight hours and in the presence of others," were "less menacing" than in *Dixon.* Finally, Coles claims that the "absence of actual fear" in the instant case "represents powerful evidence" that Coles's conduct did not satisfy the constructive violence element of robbery.

Contrary to Coles's assertion, the evidence in the instant case was more than sufficient to satisfy the element of intimidation under Maryland law. During the first robbery, Coles, entered the bank wearing a baseball hat, a scarf around his neck, and a jacket or heavy shirt in which he could have concealed a weapon. He walked up to Ms. Estes and gave her a bag and a note telling her to "[p]ut some money in the bag," and ordering her "not to hit an alarm . . . not to let anybody know," and to return the note. That note constituted an unequivocal demand for money and an intimidating command not to let anyone know that Coles was stealing the money. The threat did not end, however, with the note. Upon discovering that Ms. Estes had not put the note in the bag, Coles "looked at" her and warned her that she "better find it."

That Ms. Estes did not explicitly testify that she was afraid is of little consequence. As we pointed out in *Dixon,* proof of actual fear is not necessary when "intimidation or putting in fear is the gravamen of the action." 302 Md. at 459, 488 A.2d at 967. Ms. Estes was a thirty-year veteran teller. According to her testimony, she was concerned by Coles's note and behavior "because there were other people in the bank." She also stated that one "never know[s] what could happen at a time like th[at]," and that she "wanted him out." Given the situation, Coles's demands and commands could have been interpreted by a reasonable person as suggesting a threat of bodily harm.

We reach the same conclusion as to the second robbery. Coles walked up to Janice Hall, who was working as a teller at the time, and without saying anything, handed her a bag and a

note. In addition to demanding money, that note stated that if she complied, "no one will get hurt." Ms. Hall tried to keep the note, but Coles "put his hand over" and said, "[G]ive me back [the note]." Ms. Hall reported that the incident was "the scariest moment of [her] life." Obviously, the language that "no one will get hurt" is sufficient to suggest bodily harm for non-compliance. Ms. Hall gave him the money because she actually felt intimidated and fearful, as would any reasonable person. Although actual fear is not necessary in this analysis, evidence of it is nonetheless "probative of whether a reasonable person would have been afraid under the same circumstances." *United States v. Gilmore*, 282 F.3d 398, 403 (6th Cir.2002).

During the third robbery, Coles, wearing a jacket in which he could have easily concealed a weapon, entered the bank, walked up to teller Bernice Swann's counter, and handed her a bag and a note that read, "Put all the money in the bag no alarms thank you." Ms. Swann complied because from behind her counter, she could not "see a person" and therefore "had no idea what [Coles] had." Moreover, there were "other people in the bank, so you comply. You do what you're supposed to do." Viewing this testimony in the light most favorable to the State, we conclude that a rational fact finder could have concluded that the demand of, "Put all the money in the bag," and the command, "no alarms," were sufficient to create fear of bodily harm.

 Coles also was wearing a jacket at the time, in which he could have easily concealed a weapon. As we observed in *Dixon*, the presence of an undisclosed weapon may be inferred from the circumstances, *Dixon*, 302 Md. at 463, 488 A.2d at 970, and the presence of a deadly weapon may satisfy the constructive violence element of robbery. *Bowman v. State*, 314 Md. at 725, 730, 552 A.2d at 1303, 1305 (1989). Thus, we hold that the evidence of Coles's conduct was sufficient for a rational fact finder to conclude that the constructive violence aspect of robbery was satisfied in the instant case.

■ In so concluding, we align ourselves with the majority of federal circuits that have addressed situations similar to the instant case while interpreting the federal bank robbery statute.[11] *See Gilmore*, 282 F.3d at 403 (holding that "unequivocal written and verbal demands for money to bank employees are a sufficient basis for a finding of intimidation," reasoning that "[i]ntimidation does not require proof of express threats of bodily harm, threatening body motions, or the physical possibility of a concealed weapon"); *United States v. Hill*, 187 F.3d 698, 701 (7th Cir.1999)(characterizing actions as intimidating where defendant threw plastic bag on counter, stated, "Give me all your money" and "don't give me any of the funny money" and using derogatory term, ordered teller to hurry); *United States v. McCarty*, 36 F.3d 1349, 1357–59 (5th Cir. 1994) (affirming conviction of robbery by intimidation where defendant entered bank in disguise and gave note to teller stating, "Be calm. This is a robbery"); *United States v. Lucas*, 963 F.2d 243, 248 (9th Cir.1992)(finding intimidation where the verbal and written demand was "put the money in the bag," and defendant placed two plastic bags on counter); *United States v. Smith*, 973 F.2d 603, 603–605 (8th

---

11. 18 U.S.C. § 2113(a) states in part:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ... [s]hall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a) (2003). Coles claims that the federal statute is inapplicable because it is broader than Maryland robbery law. We disagree. The predecessor to Section 2113(a) used the phrase "putting in fear," the same description of the type of constructive violence required in Maryland cases. *United States. v. Higdon*, 832 F.2d 312, 315 (5th Cir.1987). The change in the federal statute has been viewed as technical rather than substantive, and the dictionary definition of intimidation is synonymous with the phrase "putting in fear." *Id.* Moreover, Maryland cases have used the term "intimidation" and the phrase "putting in fear" interchangeably. *See e.g. Dixon*, 302 Md. at 459, 488 A.2d at 967 (declaring the "test properly to be applied in cases ... where intimidation or putting in fear is the gravamen of the action")

Cir.1992)(finding intimidation had been established where defendant appeared nervous, wore fanny pack, and stated, "I want to make a withdrawal. I want $2,500 in fifties and hundreds," and where he twice demanded $5,000, leaned into the window, and said, "come on, come on, give me the money"); *United States v. Henson,* 945 F.2d 430, 439 (1st Cir. 1991) (finding intimidation in written demand note that read, "put fifties and twenties into an envelope now!"); *United States v. Graham,* 931 F.2d 1442, 1442–43 (11th Cir.1991)(affirming robbery conviction where defendant glared at and leaned over counter toward teller, who could not tell if he had a weapon, and handed her note stating, "This is a robbery. Please give me small, unmarked bills, touch off no alarms, and alert no one for at least ten minutes. Thank you"); *United States v. Epps,* 438 F.2d 1192, 1193 (4th Cir.1971)("We think the note, handed to the teller by Epps, which stated, 'Put all your money in this bag and nobody will get hurt,' sufficient under the circumstances to permit the jury to find that the bank robbery had been committed by intimidation within the meaning of 18 U.S.C.A. § 2113(a).")

Finally, we do not address Coles's remaining contention, that the Circuit Court failed to render a specific verdict of guilt for the second degree assault and theft counts of the criminal information, because we conclude that the evidence was sufficient to support his convictions of robbery.

*JUDGMENT AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

Dissenting Opinion by BELL, C.J. and ELDRIDGE, J.

Chief Judge Bell and Judge Eldridge dissent essentially for the reasons set forth in the dissenting opinion in *Dixon v. State,* 302 Md. 447, 464–465, 488 A.2d 962, 970 (1985).