594 A.2d 634

Leonard MILES

and

Michael Jackson

v.

STATE of Maryland.

No. 1525 Sept. Term, 1990.

Court of Special Appeals of Maryland.

Sept. 3, 1991.

250

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

Ann Norman Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Argued before CATHELL, DAVIS and HARRELL, JJ.

HARRELL, Judge.

Leonard Miles and Michael Jackson, the two co-appellants in this appeal, were tried together by a jury in the Circuit Court for Montgomery County on a variety of charges arising from a housebreaking. Both appellants were convicted of two counts of first-degree rape, one count of first-degree sexual offense, one count of assault with intent to rob, one count of battery, and one count of daytime housebreaking. The two appellants received identical sentences: three concurrent life sentences for the sex offenses; ten years concurrent for the assault with intent to rob conviction; twenty years concurrent for the battery conviction; and ten years consecutive for the housebreaking conviction. At the conclusion of the sentencing, the trial judge added a probation to the sentence by saying:

> If there does come a time when you are out on probation, I place you on probation for a period of 10 years the first five years of which will be supervised.
>
> I will leave it up to the sometime future probation officer to make any determination as to whether or not you have any—there is any necessity for you to be looked at and any analysis made of whether or not you have any drug problem at that time. That is so far down in the future that I don't know when it might possibly be.

The appellants now raise the following assertions of error:

1. The trial judge refused to allow the defense to ask the victim whether she had ever made any illegal drug sales;
2. The trial judge admitted an exhibit which was not disclosed to the defense prior to trial;
3. The evidence was insufficient to prove the conviction for assault with intent to rob;
4. The evidence was insufficient to prove any of the charges because the State's identification evidence was inadequate;
5. The battery conviction should have been merged into the assault with intent to rob conviction;
6. The twenty-year sentence for the battery conviction should be reduced to ten years;
7. The probation ordered as part of the sentence is illegal; and
8. The second first-degree rape conviction should have been dismissed because both convictions arose from the same act.

We shall begin by setting forth a brief overview of the facts which we shall augment as we consider individually these eight assertions of error.

The State's evidence showed that the victim was in her apartment, sleeping, on the morning of 23 September 1989. Around 8:30 a.m., the two appellants, whom she recognized in the course of the events that unfolded, broke into her townhouse. They seized her seven-year-old son and held the boy at knife point. They then robbed her of around $200.00, each appellant raped her, and appellant Jackson forcibly had oral sex with her.

1. Restriction of Cross–Examination.

■ The State's first witness was the victim. She explained how the two appellants entered her apartment and attacked her. After she completed her direct testimony,

counsel for appellant Miles cross-examined her. When he finished his questioning, a bench conference was held. At the conference, the attorney for appellant Jackson told the trial judge that he wanted to question the witness about "specific instances of past sexual relations with my client." Counsel went on to explain that it was his contention that the victim was a drug dealer and that Jackson sold drugs for her while concurrently having a sexual relationship with her. In the time before the assault, counsel stated, Jackson had become a heavy user of drugs and, instead of selling the drugs provided to him by the victim, had consumed the drugs himself. This left him without the money to pay the victim. Counsel went on to explain that he was asserting that this situation led the victim to make up the charges against Jackson as a means for getting back at him.

The trial judge decided that the proposed questioning brought the rape shield statute into play (Md.Ann.Code, art. 27, § 461A). In compliance with the requirements of that law, he conducted an *in camera* hearing.

At the hearing, the victim denied that she had ever bought drugs from Jackson, sold drugs to Jackson, or had had prior sexual relations with Jackson. The trial judge, upon hearing this testimony, ruled that he would not allow counsel to ask the victim whether she had been a drug dealer or had sexual relations with Jackson prior to 23 September 1989. He explained that he was making the ruling because the proposed questioning would be unfairly inflammatory towards the victim.

The appellants [1] argue that it was error for the trial judge to have refused to let them ask the victim about her sale of drugs to Jackson. They reason that this ruling was error because it deprived them of the opportunity to develop their "defense that [the victim] was prejudiced against them."

---

1. The State points out that this issue was raised only by appellant Jackson and hence, in no event could provide a reason for reversing appellant Miles's convictions. Miles made no objection to the trial judge's ruling following the *in camera* proceeding.

We discern no error in the trial judge's ruling. The victim testified at the hearing that she had never had any prior sexual relations or drug dealings with appellant Jackson. If defense counsel had been permitted to repeat the questions before the jury, he would have received the same negative answers. The trial judge's ruling did not prevent the defense from introducing evidence that the victim was prejudiced against them. The evidence appellants now complain was denied them was not denied them because of the trial judge's ruling, but was denied them because the witnesses they hoped would provide the evidence did not testify as they had hoped.

2. Admissibility of Expert's Chart.

■ Appellants argue that the trial judge erred by admitting into evidence a chart that was prepared by the State's shoe print identification expert. The facts regarding this matter are as follows.

The victim testified that the appellants entered her home by breaking through her kitchen door. Photographs were admitted into evidence that showed footprints on the exterior of the kitchen door. The police testified that around noon on the day of the break-in, they seized tennis shoes from the two appellants that the appellants were then wearing. An expert in shoe print examination, Alexander Mankevich, compared the prints found on the kitchen door with the appellants' shoes. He identified specific footprints on the door and opined that the prints could have been made by the shoes seized from the appellants. All of this testimony was admitted without objection.

After this testimony was received, the prosecutor asked Mr. Mankevich whether he had made enlarged photographs of appellant Miles's shoes. Mr. Mankevich answered that he had, whereupon he produced a chart that showed an enlarged photograph of the shoe print of appellant Miles's shoe. A bench conference was then held to decide whether the chart should be admitted into evidence. Defense counsel averred that the chart was "like a report" and should be

excluded because it was not provided to the defense during the pretrial discovery process. Md.Rule 4–263(b)(4). The prosecutor responded by explaining that the chart was "just a demonstrative diagram" that was being offered to show how Mr. Mankevich had reached his conclusion. The chart did not, he said, contain any new information. The trial judge then inquired why the chart had not been disclosed to the defense. In the course of a discussion between the trial judge and counsel, it developed that about a month before the trial, the State informed the defense that Mr. Mankevich would testify as an expert in shoe print identification. At that time the chart had not been prepared and therefore its existence was not mentioned.[2] After being told about Mr. Mankevich and reviewing his earlier narrative report, defense counsel decided there was no need to speak with Mr. Mankevich, so they never contacted him. The trial judge ruled that the chart would be admitted as an exhibit because the defense had not contacted Mr. Mankevich prior to trial and because the defense had made no showing that the chart prejudiced them, since it only served to underscore what Mr. Mankevich had previously said in his earlier report and testimony, *i.e.*, the appellants' shoes could have made the prints on the victim's door.

After the trial judge ruled that the chart was admissible, the prosecutor asked Mr. Mankevich to use the chart to explain how he made the shoe print comparison. Mr. Mankevich gave a brief answer and then defense counsel made a further objection. Counsel explained that the chart

---

2. It seems that Mr. Mankevich prepared the report on his own initiative and did not inform the State of its existence until the day of trial.

The chart was not included in the record sent to this Court. Md. Rule 8–413(a) requires that "all original papers filed in the action" be included in the appeal record. Previously, we have ruled that it is the party's responsibility to see to it that the appeal record is complete. *White v. State,* 8 Md.App. 51, 54, 258 A.2d 50 (1969) *cert. denied,* 257 Md. 737 (1970). Nevertheless, on our own motion, we have procured the chart from the circuit court and shall resolve this matter on its merits.

contained a scale [3] and complained that the enlarged photographs with the scale should not be allowed because they were not evidence. The trial judge overruled the objection and explained that he was doing so because prior to trial, the defense had made no effort to contact Mr. Mankevich.

In this appeal, the appellants renewed the two objections they made at trial. For purposes of this opinion, we shall consider the chart to be a report that was subject to discovery under Md.Rule 4–263. The trial judge, in effect, concluded that the failure to disclose did not harm the defense, so he decided to exercise his discretion by allowing the chart to be admitted into evidence.

In *Rose v. State*, 78 Md.App. 275, 287 (1989), we considered a situation in which the State had failed to disclose some evidence, but the failure to disclose had caused no prejudice to the defense. Nevertheless, the defendant asked that his convictions be reversed on account of the State's failure to disclose. We declined to order the reversal and explained:

> The appellant did not seek a continuance for further preparation for the obvious reason that he did not need one. The "question of whether any sanction is to be imposed for a discovery violation, and if so what sanction, is in the first instance committed to the discretion of the trial judge, and that the exercise of that discretion includes evaluating whether the violation prejudiced the defendant." *Evans v. State*, 304 Md. 487, 500, 499 A.2d 1261 (1985). We see no abuse of that discretion here.

The same reasoning applies here. On cross-examination, Mr. Mankevich acknowledged that he was unable to make a positive identification of the appellants' shoes as the ones that made the prints on the victim's door. We discern no

---

**3.** The three photographs included in the chart are enlarged. The scale about which appellants complain shows the magnitude of the enlargement. A comparison of the scale on the chart to a ruler shows that what is in reality six inches in length appears on the chart photographs to be slightly more than six and a half inches in length.

abuse of discretion by the trial judge and hence, no reversible error.

Since we fail to perceive how the scale's presence on the chart caused the appellants any prejudice, we hold that the presence of the scale did not create a reason for excluding the chart from the evidence.

3. Sufficiency of Evidence to Prove Assault With Intent to Rob.

Both appellants were convicted of assaulting with intent to rob the victim's seven-year-old son. The evidence presented at trial showed that, when the victim heard the appellants breaking into her house, she told her son to hide. The victim herself hid in her closet. Her son testified that he tried to hide behind a pillow. He heard the two men mount the stairs; one went into his mother's room and the other came into his room. The man who came into his room, whom he identified as appellant Jackson, was armed with a knife. Jackson found him, picked him up, and held the knife under his throat. In the process, the boy's throat was cut. Meanwhile, Miles found the victim and pulled her out of her closet. Jackson then took the young boy to his mother's room.

The victim explained that, when she was pulled from her hiding place in the closet, both men struck her. Jackson continued to hold her son in a headlock, while Miles demanded money from her. First, he took some jewelry and about $100.00 cash from a night stand. He then found her purse and took $60.00 to $70.00 from it. After Miles took the money, the two men alternately raped the mother.

In his testimony, the son did not mention witnessing the theft. Furthermore, no evidence was presented to show that he owned any of the stolen property, had a special interest in it, or had any authority over it.

At the trial, it was virtually conceded that neither appellant had any intent to rob the son. The defense took the position that the crime required that the assault victim also

had to be the person whom the accused intended to rob. The State countered by arguing that it was immaterial whom the accused intended to rob, as long as there was an intent to rob someone. The trial judge pondered over the matter and, in doing so, acknowledged that the law was unclear on the subject. Ultimately, he decided to accept the State's theory. Nevertheless, he tried to avoid making an issue of the matter for the jury by giving them a non-committal instruction. He accomplished this by telling the jury only that the crime required proof that "the defendant assaulted a victim and that the assault was committed with the intent to rob." The jury, however, recognized the problem. During their deliberations they sent the trial judge the following question:

Regarding the fifth count, assault with intent to rob, can a Defendant be convicted of this charge when he assaulted one person (the son) with intent to rob another (his mother)?

The trial judge answered the question, "yes" and a short time later the jury returned with its verdict of guilty.

In attacking the sufficiency of the evidence, the appellants essentially ask that we declare that the trial judge's answer to the jury question was wrong.

As noted by the parties, this specific question has not previously been considered by an appellate court of this State. The statute, Md.Ann.Code, art. 27, § 12, does not define the crime of assault with intent to rob, but simply establishes that the maximum penalty for the offense is to be ten years' imprisonment for the offense. Since there is no statutory presumption in Maryland with regard to assault with intent to rob, as to whether an act was done with any specific intent, we next look to our common law.

This Court has defined this particular crime as "an aggravated assault requiring a specified intention in addition to the intentional doing of the *actus reus* itself—an intent specifically required for guilt of the particular offense, in this instance an intent to rob." *Bryant v. State*, 4 Md.App.

572, 577–578, 244 A.2d 446 (1967). Thus, in *Bryant*, the Court determined that in order to obtain a conviction, the State had to prove: (1) an assault on the victim; (2) made by the appellant; (3) with the intention to rob. This definition does not specifically address or answer the question at hand.

 Robbery is the felonious taking and carrying away of the personal property of another, from his or her person or in his or her presence, by violence, or by putting him or her in fear. *West v. State*, 312 Md. 197, 539 A.2d 231 (1988). Although the cases state that the property need not be taken from the owner in order to constitute a robbery (*see Tyler v. State*, 5 Md.App. 158, 245 A.2d 592 (1968), *cert. denied* 398 U.S. 940, 90 S.Ct. 1846, 26 L.Ed.2d 274 (1970)), the non-owner robbed must have had custody over the property and a legal interest or special property interest in the goods.

 In order to be the victim of a robbery, a person must therefore either own, have custody of, or otherwise have a legal interest in the property. A defendant cannot rob a person who the defendant knows in fact has no such interest in the property. Since robbery is a crime against the person (*see Hartley v. State*, 4 Md.App. 450, 464–465, 243 A.2d 665 (1967), *cert. denied* 395 U.S. 979, 89 S.Ct. 2136, 23 L.Ed.2d 768 (1969)), the son in the case *sub judice* could not have been the subject of the robbery.

 We next turn to whether the son could be deemed the subject of robbery under the theory of "transferred intent." The theory of "transferred intent" has been explained as "the state of mind which one has when about to commit a crime upon one person which is considered by law to exist and to be equally applicable although the intended act affects another person." *Wilson v. State*, 313 Md. 600, 546 A.2d 1041 (1988); *Gladden v. State*, 273 Md. 383, 404, 330 A.2d 176 (1974). Virtually all of the cases and treatises that treat this doctrine favorably have involved poisoning, shooting, striking, or throwing a missile that resulted in an

injury to the wrong (unintended) person. In order for "transferred intent" to apply, it must be shown that the accused intended to commit a crime and did commit the crime, however, against an unintended victim. In the case *sub judice*, it is clear that the charging document identified the victim as the son. There was no unintended victim. The doctrine of "transferred intent" does not apply.

■ As a matter of law, the appellants could not have formed an intent to rob the son because, as we have said, it was virtually conceded that neither appellant intended to rob the son, and there was no evidence presented that the son owned, had any special interest in, or authority over any of the stolen property. Since the appellants could not have intended to rob the son, it follows that they could not have assaulted him with an intent to rob him.

■ The final facet to be considered is whether the appellants' obvious intent to rob the mother could support a finding that the son was a victim of assault with intent to rob. Such a theory would hold that all that need be proven to support a conviction is that a defendant harbored an intent to rob at the time he concurrently committed the assault. Such a holding would not make sense, however, when one considers the purpose of the statute (Md.Ann. Code, art. 27, § 12). The statute was not enacted to cover the case where a robbery is completed. It covers the situation where an assault has occurred but the robbery was not consummated. This only makes sense where the intended robbery victim is the same as the victim of the assault.

We conclude, therefore, that, under the charging document in this case, the person who is the victim of the assault was not the same person the assailant intended to rob. Inasmuch as the son in the case *sub judice* was not the intended victim of the robbery, he could not be the victim of an assault with intent to rob him. The convictions on those counts must be reversed.

We note that the appellants were properly charged with, and convicted of, committing battery upon the son. They were not, however, charged with robbery or robbery with a dangerous weapon as to the mother.

4. Sufficiency of Evidence to Prove Criminal Agency.

Appellants argue that they should be acquitted of all charges because the identification testimony was unreliable. Both the victim and her son positively identified the two appellants. The appellants do not dispute this fact, but argue simply that other factors, such as the facts that appellant Miles has a twin brother and that the son's testimony might have been motivated by a desire to make his mother proud of him, should have led the jury to disbelieve the identification testimony.

The law recognizes that the identification by an eyewitness is sufficient to convict. *Branch v. State*, 305 Md. 177, 502 A.2d 496 (1986). Moreover, "the weight of the evidence and credibility of witnesses are always matters for the jury to determine when it is a trier of facts." *Hammond v. State*, 322 Md. 451, 463, 588 A.2d 345 (1991). The evidence was sufficient to prove the appellants' criminal agency.

5. Merger of Battery Conviction into Assault With Intent to Rob Conviction.

The appellants were convicted both of battering the son and of assaulting him with intent to rob. They argue that the battery conviction should be merged into the assault conviction. In view of our ruling on the assault with intent to rob conviction, *supra*, we do not need to resolve this argument.

6. Sentence for Battery Conviction.

The appellants charge that the twenty-year sentences they received for the battery convictions should be reduced to ten years. Their reasoning here rests on their assertion that the battery upon the son was a lesser offense of the

assault with intent to rob conviction. Under the holdings in *Simms v. State*, 288 Md. 712, 421 A.2d 957 (1980), and *Gerald v. State*, 299 Md. 138, 472 A.2d 977 (1984), when a defendant is charged with a greater offense and a lesser offense, but is convicted of only the lesser offense, the maximum sentence that may be imposed is the maximum sentence allowed for the greater offense. The maximum sentence that may be imposed for a conviction under the assault with intent to rob statute is ten years. Thus, if the battery convictions entered in this case were lesser included offenses of the assault with intent to rob convictions, the maximum sentence that could be imposed for the battery convictions would be ten years. The *Simms* and *Gerald* cases, however, do not apply in this case because the appellants' battery convictions were not lesser included offenses of the assault with intent to rob convictions.

The crime of battery requires an application of force. The crime of assault with intent to rob does not require any application of force, but does require an intent to rob. *Dixon v. State*, 302 Md. 447, 457, 488 A.2d 962 (1985). The two crimes each require an element not required of the other. Consequently, the battery convictions were not lesser included offenses of the assault with intent to rob convictions. This same reasoning would have led to a conclusion that the appellants' previous argument on merger of these convictions is meritless were we to have reached it.

7. The Probation.

The State concedes, and we agree with the concession, that the order of probation was illegal. The probation period imposed was ten years. The law provides that the maximum probationary period which may be imposed is five years. Md.Ann.Code, art. 27, § 641A(a) and *Catlin v. State*, 81 Md.App. 634, 637–38, 569 A.2d 210 (1990). Because the probation imposed exceeded the period allowed by law, it is illegal, and we direct that it be vacated. Also, a probation may not be imposed unless at least a part of the

sentence is suspended. *Best v. State,* 79 Md.App. 241, 278–79, 556 A.2d 701, *cert. denied,* 317 Md. 70, 562 A.2d 718 (1989). None of the sentences imposed in these cases was suspended and consequently, no basis existed for the trial judge to have imposed any probation.

8. Second Rape Charge.

 The State charged both appellants with two counts of first-degree rape. Both counts were worded the same way. At trial, the prosecutor explained why two counts were filed. He said the first count referred to the time the individual physically raped the victim and the second count referred to the time the individual aided his co-defendant in effecting a rape. The appellants argue that the second count should have been dismissed because it resulted in their being convicted of two crimes arising from a single act. There is no merit to this argument.

The appellants' assertion that there was only a single act of rape is wrong. Each time the victim was raped, one of the defendants was guilty as the perpetrator and the other as an aider and abettor. Therefore, each defendant was properly convicted of the rape he committed and of the rape he assisted the co-defendant in committing.

We affirm all of the convictions returned in this case except those for assault with intent to rob which we reverse, and we vacate the order of probation.

JUDGMENTS FOR ASSAULT WITH INTENT TO ROB REVERSED; ALL OTHER JUDGMENTS AFFIRMED.

SENTENCE OF PROBATION VACATED.

COSTS TO BE PAID THREE–QUARTERS BY APPELLANTS AND ONE–QUARTER BY MONTGOMERY COUNTY.