REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2622

September Term, 2012

MONTRAY EUGENE WILLIAMS

v.

STATE OF MARYLAND

Berger,
Arthur,
Kenney, James A., III
 (Retired, Specially Assigned),

JJ.

Opinion by Kenney, J.

Filed: October 28, 2014

On December 6, 2012, a jury in the Circuit Court for Baltimore County convicted Montray Eugene Williams, appellant, of two counts of robbery. He was sentenced to serve two concurrent terms of life in prison without the possibility of parole. In this timely filed appeal, appellant presents two questions for our consideration:

> 1. Did the trial court err in sentencing Appellant to two life without parole sentences pursuant to §14-101 of the [Maryland Code (2002, 2012 Repl. Vol.), Criminal Law Article ("C.L.")]?
>
> 2. Did the trial court err in allowing improper and prejudicial other crimes evidence at trial?

Discerning no error in appellant's convictions, we shall affirm the judgments of the circuit court. But, because we conclude that the circuit court imposed an illegal sentence, we shall vacate appellant's sentence for the second count of robbery and remand for re-sentencing on that count.

## FACTUAL AND PROCEDURAL HISTORY

On the morning of January 10, 2012, an African-American man, about five foot, four inches tall, wearing a skull cap, a beige or khaki colored jacket, and a distinctive silver ring, entered the M&T Bank in Woodlawn, Maryland. He pushed his way to the front of the line and demanded money from the two tellers who were servicing customers. Taking approximately $516.00 from the two tellers, the man ran out of the bank. The robbery was recorded on the bank's video surveillance system.

Later that day, appellant was arrested while he was walking toward his residence at 5406 Gwyndale Avenue. When approached by the police officers, he ran towards the back of the residence, discarding his jacket, cell phone, and wallet as he ran. Some of the

discarded money matched the serial numbers of the money that had been taken from the bank. Appellant's former girlfriend confirmed that appellant sometimes wore a beige parka and a silver ring. The State also produced surveillance images from a police camera near appellant's residence that show appellant leaving his house about fifteen minutes prior to the robbery, wearing a hat, pants, and beige parka that were similar to those worn by the bank robber.

## DISCUSSION

### *The Application of C.L. § 14-101*

Appellant was previously convicted for armed robbery in 1991 and 1995, and for robbery in 2001. He served three separate terms of incarceration for these convictions. Months prior to appellant's trial in the instant case, the State filed notice of its intent to proceed against appellant as a repeat violent offender under Md. Rule 4-245.

Appellant does not challenge the adequacy of the notice provided by the State or the sufficiency of the evidence produced by the State to prove his prior convictions. He asserts that the circuit court erred by imposing enhanced sentences for both of his robbery convictions in this case. This is because his previous robbery and armed robbery convictions are not enumerated crimes of violence under C.L. §14-101(a), and therefore, the circuit court erred as a matter of law by sentencing him as a fourth-time offender. Appellant further contends that, even if the circuit court was correct in concluding that the enhanced penalty

statute was applicable, the court erred by imposing two enhanced sentences for his convictions, which arose from the same robbery.

The State rejects appellant's interpretation of C.L. §14-101(a)(9), asserting that it ignores the clear legislative purpose of the statute and would lead to an absurd result. As to appellant's second argument, the State contends that, because appellant failed to raise any objection to his sentences at the time they were imposed by the court, he has waived the argument for the purposes of his appeal.

Whether the circuit court correctly interpreted and applied the relevant sentencing statute is a question of law, which we shall review *de novo*. *See e.g. Pitts v. State*, 205 Md. App. 477, 486 (2012) ("Where a trial court's determination requires the interpretation and application of Maryland's constitutional, statutory or case law, we must determine whether the trial court's legal conclusions are correct utilizing a *de novo* standard of review." (Citation omitted)).

The offense of robbery, for which appellant was convicted, is proscribed by C.L. §3-402.[1] Appellant was sentenced as a repeat violent offender pursuant to C.L. §14-101, which

---

[1]C.L. §3-402 provides:

(a)    A person may not commit or attempt to commit robbery.

(b)    A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years.

provides, in pertinent part:

> (b)     Fourth conviction of crime of violence.
>
> > (1)     Except as provided in subsection (f) of this section, on conviction for a fourth time of a crime of violence, a person who has served three separate terms of confinement in a correctional facility as a result of three separate convictions of any crime of violence shall be sentenced to life imprisonment without the possibility of parole.
> >
> > (2)     Notwithstanding any other law, the provisions of this subsection are mandatory.

C.L. §14-101(b).  Among the enumerated crimes of violence that form the basis for an enhanced penalty, the statute includes "robbery under §3-402 or §3-403 of this article[.]" C.L. §14-101(a)(9).

Prior to 2000, robbery was a common law offense with a statutory penalty.  *See* Md. Code (1957, 1996 Repl. Vol.) §§486, 488 of Article 27 (setting the maximum penalties for the crimes of robbery and robbery with a deadly weapon, but not defining those offenses). The General Assembly codified the crimes of robbery and armed robbery as Art. 27 §486 and Art. 27 §487, respectively, effective October 1, 2000.[2]  When the Criminal Law Article was subsequently adopted on October 1, 2002, the statutes proscribing robbery and armed robbery

_____

[2]As codified, "robbery" retains its common law definition, "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." *Smith v. State*, 412 Md. 150, 156 n. 1 (2009) (citations and quotations omitted); *see also* C.L. §3-401(e).  The statute clarifies that a taking of services may also form the basis of the offense, and that to support a robbery conviction there must be proof of the defendant's intent to deprive the victim of the property or the value thereof.  C.L.  §3-401.

4

were recodified as C.L. §3-402 and C.L. §3-403, "without any substantive change" from Art. 27 §486 and Art. 27 §487.  Revisor's Notes, C.L. §§3-402, 3-403.

The current version of the enhanced penalty statute, C.L. §14-101, was derived without substantive change from Art. 27 §643B, which was originally enacted in 1975. Revisor's Notes, C.L. §14-101; Art. 27 §643B.  For as long as there has been an enhanced penalty statute in Maryland, robbery and armed robbery have been included in the enumerated list of violent crimes that form the basis for the imposition of a more severe sanction against repeat violent offenders.  C.L. §14-101; Art. 27 §643B.

Prior to October 1, 2000, Art. 27 §643B(a) included robbery and armed robbery in the list of offenses constituting crimes of violence, without any modifications, limitations, restrictions, or accompanying references.[3]  Committee Notes, Art. 27 §643B.  In 2000, when robbery and armed robbery were codified, the legislature also amended Art. 27 §643B to

_____

[3]Before October 1, 2000, Art. 27 §643B(a) provided in pertinent part:

As used in this section, the term "crime of violence" means abduction; arson; burglary; daytime housebreaking under §30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§384, 385, and 386 of this article; murder; rape; **robbery; robbery with a deadly weapon**; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; assault with intent to rape; assault with intent to rob; assault with intent to commit a sexual offense in the first degree; and assault with intent to commit a sexual offense in the second degree.

(emphasis added).

5

reference the new statutes, replacing the reference to "robbery" and "robbery with a weapon" with "robbery under §486 or §487 of this article[.]"[4]  When the Criminal Law Article was adopted in 2002, the recodified enhanced penalty statute, C.L. §14-101, adopted the statutory references to the sections of the Article that defined robbery and armed robbery.[5]  C.L. §14-101.

Appellant contends that his previous convictions for robbery and armed robbery occurred before the adoption of the Criminal Law Article on October 1, 2002, and therefore,

---

[4]From October 1, 2000, until September 30, 2002, Art. 27 §643B(a) provided in pertinent part:

> As used in this section, the term "crime of violence" means abduction; arson in the first degree; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming, as previously proscribed under §§ 384, 385, and 386 of this article; murder; rape; **robbery under § 486 or § 487 of this article**; carjacking or armed carjacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree, as these crimes were previously proscribed under former § 12 of this article.

(emphasis added).

[5]Since October 1, 2002, C.L. §14-101(a) has provided in pertinent part:

(a)      In this section, "crime of violence" means:

*       *       *

(9)      robbery under §3-402 or §3-403 of this article;

6

they were not convictions under C.L. §3-402 (robbery) or §3-403 (armed robbery). His 2001 robbery conviction arose under Art. 27 §486, which was in effect from October 1, 2000 to September 30, 2002, and his 1991 and 1995 convictions for armed robbery arose under the common law. *See* Art. 27 §486 *Coles v. State*, 374 Md. 114, 123-25 (2003) (discussing development of robbery from common law to codification). Therefore, he argues that his previous convictions for robbery and armed robbery did not arise under C.L. §3-402 and §3-403, as required by the plain language of C.L. §14-101(a)(9), and those previous convictions cannot be the basis for imposing an enhanced penalty under C.L. §14-101(b).

When a case requires this Court to interpret the language of a statute, we employ a well-established set of principles, which we recently reiterated, stating:

> [T]he primary goal of statutory construction is "'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision[.]'" *Barbre v. Pope,* 402 Md. 157, 172 (2007) (quoting *Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20 (2007)). The necessary first step is to look to the "normal, plain meaning of the language of the statute," which we read in its entirety to ensure that "'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.'" *Doe v. Montgomery Cnty. Bd. of Elections,* 406 Md. 697, 712 (2008) (quoting *Barbre,* 402 Md. at 172). If we conclude that the language of a statute is clear and unambiguous, we stop there. *Barbre,* 402 Md. at 173. But we stay within the bounds of common sense: "If persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it.... This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense." *Adamson v. Corr. Med. Servs.,* 359 Md. 238, 251–52 (2000) (citations omitted). If there is ambiguity or the language is susceptible to more than one meaning, then we look further: to "legislative history, case law, purpose, structure, and overarching statutory scheme in aid of searching for the intention of the Legislature." *Whitley v. Md. State Bd. of Elections,* 429 Md. 132, 149 (2012). We don't go out of our way to find ambiguity, and "[i]f a

7

specific term is not defined in the statute, the Court 'will give that term its ordinary and natural meaning and will not resort to subtle or forced interpretations for the purpose of extending or limiting the operation of the statute.'" *F.D.R. Srour P'ship v. Montgomery County,* 179 Md. App. 109, 123 (2008) (quoting *Md.–Nat'l Capital Park & Planning Comm'n v. State Dep't of Assessments & Taxation,* 110 Md. App. 677, 689 (1996), *aff'd,* 348 Md. 2 (1997)), *aff'd*, 407 Md. 233 (2009).

*Butler v. State*, 214 Md. App. 635, 669-70 (2013) (parallel citations omitted).

Resolution of the question now before us requires a determination of whether the General Assembly intended that only robberies and armed robberies committed after the adoption of C.L. §3-402 and §3-403 may result in an enhanced sentence under C.L. §14-101(a)(9) .[6] We shall assume for the purposes of this analysis that the plain language of C.L. §14-101(a)(9) may be susceptible to more than one meaning. We begin with the observation that appellant does not assert that there is a substantive difference between a robbery committed before October 1, 2002, and a robbery after that date, and we perceive no substantive difference.[7] Therefore, because the interpretation of the statute advanced by appellant is, in our view, illogical and contrary to both common sense and code revision

---

[6]Because C.L. §14-101 was derived without substantive change from Art. 27 §643B, which also contained the references to the robbery statutes, we must look at the legislative history of that statute to determine why the provision related to robbery was amended in 2000. Revisor's Notes, C.L. §14-101. Because the two statutes are substantially the same, we shall also consider cases arising under the amended Art. 27 §643B as analogous to cases arising under C.L. §14-101 for the purposes of this appeal.

[7]In cases such as this, where, over an extended criminal career, a defendant had amassed multiple prior convictions for robbery or armed robbery, each prior conviction would have to be evaluated individually to determine under which statute it arose, and if it could form the basis for an enhanced sentence.

8

principles, we will look beyond the language and consult other sources to discern the intent of the legislature.

Nevertheless, we will consider appellant's interpretation of C.L. §14-101(a)(9) in light of the other provisions of the enhanced sentencing statute. Of all the offenses that have consistently been included in the list of crimes of violence, the only other crime that is identified by reference to the section of the Maryland Code proscribing it is maiming.[8] C.L. §14-101(a). Under appellant's interpretation of C.L. §14-101(a)(9), courts would be obligated to analyze prior convictions for robbery or armed robbery differently than they analyze prior convictions for other common law crimes identified in C.L. §14-101(a). For example, prior convictions for murder, kidnapping, rape, and assault would be the basis for an enhanced sentence no matter when those convictions occurred. C.L. §14-101(a). But, only prior robbery convictions would be time limited to the period after the adoption of the Criminal Law Article. We see, and appellant identifies, nothing about the crimes of robbery or armed robbery, which maintain their common law definition, that make them different

---

[8]C.L. §14-101(a)(6) refers to "maiming, as previously proscribed under former Article 27, §§385 and 386 of the Code" as a crime of violence. The offense of maiming *per se*, is no longer statutorily codified as a criminal offense; both maiming statutes having been repealed in 1996. Art. 27 §385; Art. 27 §386. The offense is now, generally, prosecuted as an assault.

The only other offenses included in C.L. §14-101(a) that are identified by reference to the operative criminal statutes are first degree child abuse, C.L. §14-101(a)(15), child sexual abuse, C.L. §14-101(a)(16), and continuing course of conduct with a child, C.L. §14-101(a)(18), which are all statutory offenses that were not added to the list of violent crimes until 2006. C.L. §14-101(a); Historical and Statutory Notes, C.L. §14-101.

from other common law offenses enumerated in C.L. §14-101(a), such that prior convictions for robbery or armed robbery would be eliminated from enhanced sentence consideration.

Looking at the enhanced sentencing statute as a whole, we find additional indications that it was not the legislature's intent to do so. The offenses of mayhem, maiming, assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree, no longer exist as statutory offenses in Maryland. C.L. §14-101(a); Art. 27 §12, §384, §385, §386 (repealed in 1996). Including these offenses in the list of crimes of violence reflects the legislative intent to impose enhanced sentences on the basis of convictions that occurred before the adoption of the Criminal Law Article. C.L. §14-101(a)(5)-(6), (20)-(26). Indeed, as the Committee Note accompanying the 1996 revision of the statute expressly states, "reference to these repealed sections . . . must be retained under this section of law to ensure that they may be used as predicate offenses for the subsequent offender provisions of this statute." Committee Note (Committee to Revise Article 27), Art. 27 §643B. The express language of C.L. §14-101(d), imposing a mandatory minimum sentence of 10 years for a second conviction of a crime of violence, allows the imposition of an enhanced sentence for crimes committed before October 1, 1994, long before the Criminal Article was adopted. C.L. §14-101(d). Thus, to interpret C.L. §14-101(a)(9) in the manner appellant suggests, would be contrary to the express legislative intent embedded in other provisions of the enhanced penalty statute.

10

Examining the Maryland Code more broadly, we see that the definition of "crime of violence" as set forth in C.L. §14-101(a) is incorporated and referenced in many other statutes.[9] For example, the commission or intent to commit a crime of violence is an element of several other offenses proscribed by the Maryland Code, potentially exposing individuals who commit any of the enumerated offenses to additional charges based on the circumstances of the crime.[10] The fact that an individual has been charged with a crime of violence, empowers the State to collect the individual's DNA for inclusion in a State-wide database,[11]

---

[9]For example, §1-101(e) of the Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Article ("C.P.") defines a "crime of violence" in reference to C.L. §14-101. Maryland Code (1999, 2008 Repl. Vol.), §6-101(c) of the Correctional Services Article ("C.S.") adopts C.L. §14-101's definition of crime of violence for the purposes of the statutes relating to parole and probation. Maryland Code (1974, 2013 Repl. Vol.), §12-302(c)(3) of the Courts and Judicial Proceedings Article ("C.J.P.") limits the State's right to appeal from a circuit court's exclusion of evidence in cases involving one of the enumerated crimes of violence in C.L. §14-101.

[10]For example, an individual who commits a crime of violence may be charged with and separately sentenced for additional offenses if during the commission of the violent crime the individual wears bulletproof body armor, C.L. §4-106; uses or possesses a Tazer device, C.L. §4-109(b); uses or possesses a regulated firearm, Md. Code (2003, 2011 Repl. Vol.), §5-101(c) of the Public Safety Article ("P.S."); or uses or possesses restricted ammunition, C.L. §4-110(b). The definition of crime of violence is also incorporated into the statute defining the crimes of burglary, and is considered as an aggravating factor increasing the penalties attendant to the offenses of inducing false testimony, retaliating against witnesses, intimidating or corrupting a juror, and attempting to elude an officer. C.L. §6-201; C.L. §9-302(c)(2); C.L. §9-303(c)(2); C.L. §9-305(c)(2); Md. Code (1977, 2012 Repl. Vol.), §21-904(e)(2) of the Transportation Article ("Tr.").

[11]A DNA sample for inclusion in the State-wide DNA database may be collected from any individual charged with a crime of violence under C.L. §14-101(a). P.S. §2-501(e)(1); P.S. §2-504(a)(3)(i)(1).

11

may affect the individual's eligibility for pre-trial release,[12] reduces the options available to the individual as part of a plea bargain,[13] and potentially impacts the evidence that may be admitted against him or her at trial.[14] After conviction, an individual who committed a crime of violence is less likely to be released on parole. C.S. §7-301(a)(3)(i). The good conduct credits of incarcerated violent offenders accrue at half the rate of non-violent offenders. C.S. §3-704(b)(2). Individuals serving sentences for violent offenses or those previously convicted for a violent offense are also prohibited from participating in most home detention or work release programs. C.S. §3-404(2); C.S. §11-723(1)(4)(i). Even after a violent offender has served his or her sentence, an individual's status as a violent offender may

---

[12] An individual charged with a crime of violence is not eligible for pretrial release. *See e.g.* C.P. §5-202 (State Prisons); C.S. §11-706(e)(4)(iii)(1) (Calvert County);C.S. §11-708(d)(1) (Carroll County); C.S. §11-723(1)(4)(i) (Washington County).

[13] *See e.g.* C.P. §6-229(a)(1), an individual charged with a crime of violence is not eligible for sentencing to a drug or alcohol treatment program.

[14] *See e.g.* C.J.P. §10-407(c) (allowing the admission of hearsay obtained pursuant to a legally conducted wiretap or other electronic surveillance when all parties to the communication were co-conspirators to a crime of violence).

impact his or her rights in family law cases,[15] may affect his or her ability to obtain a job,[16] a professional license, or a certification,[17] and prevents the individual from legally owning certain items of property under penalty of law.[18] Limiting the definition of "crime of violence" by adopting appellant's preferred interpretation of C.L. §14-101(a)(9) could potentially impact the application of many other statutes implemented to protect the citizens of Maryland.

When the General Assembly codified the offenses of robbery and armed robbery and passed the pertinent amendment to Art. 27 §643B, it also amended the language of several other statutes that referenced robbery and/or armed robbery in the same way by adding

---

[15]A county department of health and human services may petition the juvenile court to find that the department need not provide any services to facilitate reunification of a child with their parent who has been previously convicted of a crime of violence against the child, a minor sibling, or another parent of the child. C.J.P. §3-812(b)(2)(i); Md. Code (1984, 2012 Repl. Vol.), §5-101(d)(1) of the Family Law Article ("F.L."). Moreover, a department is instructed to immediately file a petition for termination of parental rights against any parent who is convicted for committing a crime of violence against the child, a sibling, or another parent. F.L. §5-525.1(b)(1)(iii)(1).

[16]All county boards of education and all private schools subject to the Maryland Code (1978, 2014 Repl. Vol.) Education Article ("Ed.") are prohibited from knowingly employing any individual who has been convicted of a crime of violence. Ed. §6-113(3); Ed. §2-206.1(a)(3).

[17]Government Departments that participate in licensing and certification activities are prohibited from discriminating against former non-violent offenders, but there is no such prohibition for former violent offenders. *See e.g.* C.P. §1-209(b).

[18]For example, individuals previously convicted of a crime of violence are prohibited from owning regulated firearms, Tazer devices, and body armor.

13

language that referred to the new sections of the Code.[19] Acts 2000, Ch. 288 (effective October 1, 2000); *see also* Art. 27 §372 (Uniform Machine Gun Act); Art. 27 §410 (First Degree Murder); Art. 27 §413(Sentencing in Capital Murder Cases); Art. 27 §441 (Regulated Firearms); Art. 88B §12A (Statewide DNA Database System); C.J.P. §3-804 (Jurisdiction of Juvenile Court); C.J.P. §10-402 (Wiretapping and Electronic Surveillance); C.J.P. §10-406 (Wiretapping and Electronic Surveillance). Neither the legislative history of the act that effectuated the amendments, nor the committee notes for the individual statutes directly address why the legislature felt it necessary to amend these statutes to include the statutory references, but neither is there any indication of a legislative intent to effect a substantive change. It appears that the language was added to call attention to the codification of robbery and armed robbery.

Based on a cursory review of published appellate opinions after October 1, 2000, when Art. 27 §643B was originally amended, it is clear that courts have continued to impose

---

[19] Of the eight statutes that were amended to add the statutory references in 2000, five continue to retain the additional language today, as amended to refer to the recodified robbery statutes in the Criminal Law Article. *See* C.L. §4-401(b)(vi) (Uniform Machine Gun Act); C.L. §2-201(a)(4)(ix) (First Degree Murder); C.J.P. §3-8A-03(d)(4)(vi) (Jurisdiction of Juvenile Court); C.J.P. §10-402 (c)(2)(ii)(1)(H) (Wiretapping and Electronic Surveillance); C.J.P. §10-406(a)(8) (Wiretapping and Electronic Surveillance). Of the three statutes that no longer include the amended language, C.L. §2-303(g)(1)(x)(4) (Sentencing in Capital Murder Cases), retained the language until it was repealed in 2013, P.S. §2-501(e)(1) (Statewide DNA Database System) adopted a reference to C.L. §14-101 by amendment in 2003, and P.S. §5-101(c) (Regulated Firearms), was amended for clarity in 2003 to replace "robbery under §3-402 and §3-403 of this Article" with (13) robbery; and (14) robbery with a deadly weapon. C.L. §2-303; Legislative Notes (Acts 2003, c. 5), P.S. §2-501; Legislative Notes (Acts 2003, c. 5), P.S. §5-101.

enhanced penalties based on prior convictions for robbery and armed robbery that arose under the common law, not under Art. 27 §486 and §487 or under C.L. §3-402 and §3-403, as appellant now suggests would be required by the plain language of the enhanced penalty statute. *See e.g. Stevenson v. State*, 180 Md. App. 440, 443-44 (2008) (predicate conviction for robbery in 1992 formed basis for enhanced sentence in 2004, pursuant to C.L. §14-101(e), sentence vacated because defendant had not served the requisite period of incarceration as a result of previous conviction); *Coles v. State*, 374 Md. 114, 132 n. 4 (2003) (predicate conviction for armed robbery in 1991 formed basis for enhanced sentence in 2001, pursuant to Art. 27 §643B(d), convictions affirmed); *Facon v. State*, 144 Md. App. 1, 12, 49 (2002) *rev'd on other grounds,* 375 Md. 435 (2003) (predicate convictions for armed robbery in 1989 and 1995 formed the basis for enhanced sentence in 2001, pursuant to Art. 27 §643B(c)); *Gibson v. State*, 138 Md. App. 399, 422 (2001) (predicate convictions for robbery in 1968 and 1970 formed the basis for enhanced sentence in 2000, pursuant to Art. 27 §643B(c)); *Gerald v. State*, 137 Md. App. 295, 313 (2001) (predicate conviction for armed robbery in 1994 formed part of basis for enhanced sentence in 2000, pursuant to Art. 27 §643B).

The question now before us does not appear to have been previously raised or addressed in a published opinion. On the other hand, in no published Maryland opinion of which we are aware has this Court or the Court of Appeals ever questioned that a previous conviction for robbery or armed robbery arising under common law or under an earlier

15

version of the Code, would qualify as a previous conviction for enhanced sentencing purposes upon the defendant's conviction for a subsequent violent offense.

Moreover, the interpretation of C.L. §14-101(e)(9) advanced by appellant is contrary to the clear purpose of the enhanced penalty statute. As the Court of Appeals opined in *Jones v. State*, 336 Md. 255, 264 (1994):

> "the penological objectives of statutes such as §643B(c) which mandate the extended incarceration of recidivist criminals [are] to provide warning to those persons who have previously been convicted of criminal offenses that the commission of future offenses will be more harshly punished, and to impose the extended period of incarceration upon those who fail to heed that warning so as to protect society from violent recidivist offenders."
>
> *See, e.g., Gargliano v. State*, 334 Md. 428, 442–45 (1994); *Jones v. State*, 324 Md. 32, 38 (1991); *Minor v. State*, 313 Md. 573, 576 (1988); *Hawkins v. State*, 302 Md. 143, 148 (1985); *Garrett v. State*, 59 Md. App. 97, 118, *cert. denied*, 300 Md. 483 (1984).

*Id*. (parallel citations omitted). The stated purpose of the statute, to provide a warning to repeat violent offenders that they will be subject to more severe sentences, and to protect the public from those repeat violent offenders who do not heed the warning, would be obstructed if we were to adopt the interpretation of the statute that appellant champions.

Robbery and armed robbery have been included as qualifying crimes of violence for as long as Maryland has had an enhanced penalty statute. Notwithstanding any asserted ambiguity in C.L. §14-101(a)(9), we are not persuaded to interpret the enhanced penalty statute in a manner that, in the context of the statutory scheme, is inconsistent with legislative intent. We conclude, therefore, that the trial court did not err in determining that appellant's

16

previous convictions for robbery and armed robbery qualify as predicate offenses under C.L. §14-101(b), justifying the imposition of a mandatory life sentence for a fourth robbery conviction.

Appellant raised no objection to the imposition of two life sentences without the possibility of parole when they were imposed, but we address the circuit court's application of the enhanced penalty statute. Because "an enhanced penalty imposed improperly is an illegal sentence," *Nelson v. State*, 187 Md. App. 1, 11 (2009) (quoting *Veney v. State,* 130 Md. App. 135, 145 (2000)), we "may correct an illegal sentence at any time." Md. Rule 4–345(a); *see also Walczak v. State*, 302 Md. 422, 427 (1985) ("when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court").

We have repeatedly opined that in cases where multiple convictions for crimes of violence arise from a single incident, the circuit court, applying the enhanced penalty statute under which appellant was sentenced, may impose only a single enhanced punishment; the sentences imposed for any additional convictions must be within the applicable statutory limits. *See Calhoun v. State*, 46 Md. App. 478, 488-89 (1980), *affirmed*, 290 Md. 1 (1981) (holding that the statute "permits the imposition of only one mandatory sentence without the possibility of parole[,]" and that "[n]ormal sentences with the possibility of parole under the appropriate statutory authority" should be imposed on the remaining counts); *State v. Taylor*, 329 Md. 671, 674 (1993) (stating that though the defendant was convicted of two crimes of

17

violence, the trial court could impose only one enhanced sentence (citing *Calhoun*, 46 Md. App. at 489)); *Jones v. State*, 336 Md. 255, 265 (1994) (deciding that "where a defendant is convicted of more than one crime of violence as the result of a single incident and has otherwise satisfied the prerequisites for imposition of the [enhanced] sentence," though the sentencing judge may impose only one enhanced sentence, the judge "may impose the [enhanced] sentence upon any one of the qualifying crime of violence convictions.").

For the purposes of sentencing enhancement, however, the bank robbery on January 10, 2012, was a single criminal incident, and therefore, C.L. §14-101 authorized the circuit court to impose only one enhanced penalty against appellant.[20]  *See Calhoun*, 46 Md. App. at 488-89 (holding that the statute "permits the imposition of only one mandatory sentence without the possibility of parole"); *Taylor*, 329 Md. at 674 (deciding that the trial court could impose only one enhanced sentence); *Jones*, 336 Md. at 265 (restating rule that the sentencing judge may impose only one enhanced sentence though multiple convictions may arise from a single criminal endeavor).

Appellant's prior convictions and periods of incarceration having been established, the sentence of life without the possibility of parole imposed by the court for appellant's first

---

[20]The unit of prosecution for robbery is the number of persons assaulted.  *See e.g. Borchardt v. State*, 367 Md. 91, 147 (2001) (distinguishing larceny, a crime against property, from robbery, which includes "elements of both larceny and assault"); *Miles v. State*, 88 Md. App. 248, 259, *cert. denied*, 325 Md. 95 (1991) (concluding that robbery is a crime against person, not property).  Because two bank tellers were involved in appellant's robbery of the M&T Bank in Woodlawn, Maryland on January 10, 2012, appellant was convicted on two counts of robbery.

robbery conviction was in accordance with the enhanced penalty statute. C.L. §14-101(b).

*Jones*, 336 Md. at 264 (opining that "[o]nce the predicate requirements for imposition of a[n enhanced] penalty are met, a judge **must** impose the mandatory minimum penalty" (emphasis added)); *Taylor*, 329 Md. at 674 (noting that had appellant been convicted of only one crime of violence, the sentencing court, properly applying the enhanced penalty statute, "**would have been required**" to impose the enhanced sentence for that conviction (emphasis added)). The court, however, erred as a matter of law in imposing the same sentence for the second robbery conviction. *See Calhoun*, 46 Md. App. at 488-89 (establishing that the enhanced penalty statute "permits the imposition of only one mandatory sentence"); *Taylor*, 329 Md. at 674 (applying *Calhoun*). Therefore, the sentence of life without the possibility of parole imposed for appellant's second robbery conviction must be vacated and the case remanded to the circuit court for resentencing for the second robbery conviction in accordance with C.L. §3-402(b).[21] *See Calhoun*, 46 Md. App. at 489 (advising that "[n]ormal sentences with the possibility of parole under the appropriate statutory authority" should be imposed for any other convictions arising from the same criminal endeavor).

*Admission of Other Crimes Evidence*

At appellant's trial, during the State's direct examination of the investigating detective, the Prosecutor asked the detective how he knew that appellant resided in the area

---

[21]C.L. §3-402(b) provides: "A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years."

of 5406 Gwyndale Avenue.  When the detective responded, "from target of investigation,"

defense counsel objected and requested a bench conference.  The court stated, "[t]here is

nothing wrong with him saying [appellant] was developed as a possible suspect and that is

why I responded to that location[,]" but the court agreed that it could be problematic if the

detective started discussing appellant's "prior criminal behavior[.]"  Ultimately, the court

sustained defense counsel's objection to the detective's assertion that he knew where

appellant lived "[from target of investigation[,]" and suggested that the prosecutor rephrase

the question.  The following colloquy then ensued:

> Q.  Detective [ ], shortly after the bank robbery came out, did you develop a suspect in this case?
>
> A.  I did.
>
> Q.  Who would that be?
>
> A.  The Defendant, Mr. Williams.
>
> Q.  And once you developed him as a suspect, where did you go?
>
> A.  I responded to the area of 5406 Gwyndale Avenue, which is his residence.
>
> Q.  Had you been to that area before?
>
> A.  I have.
>
> Q.  Have you seen him at that area before?
>
> [Defense]:  Objection.
>
> A.  Yes.
>
> THE COURT:  Overruled.  You can answer.

20

A. Yes.

Q. How many times?

A. Half a dozen times.

Q. In what area, December, January?

A. Weeks just prior to this robbery.

Appellant asserts that the trial court abused its discretion by allowing the State to elicit irrelevant and prejudicial other crimes evidence from the investigating detective, over the objection of defense counsel. He contends that the detective's testimony constituted prior bad acts evidence by suggesting that appellant had been the target of police surveillance for several weeks prior to the robbery at the M&T Bank, presumably as part of the police department's investigation of other crimes. "[L]acking any relevancy or probative value," appellant suggests that "the testimony here could only serve to show that [he] had a criminal disposition." In appellant's view, the trial court's admission of the prejudicial testimony could not constitute harmless error, and he is entitled to a new trial.

In response, the State contends that the detective's testimony was relevant to prove that appellant was the individual who committed the charged robberies, and that appellant mischaracterizes the detective's testimony. In the State's view, the trial court did not abuse its discretion by overruling appellant's objection to relevant and non-prejudicial evidence and allowing the detective's testimony.

Maryland Rule 5-401 provides:

21

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Generally, relevant evidence is admissible, but irrelevant evidence is inadmissible. Md. Rule 5-402. The determination of what evidence is relevant rests in the trial court's discretion and its determination will not be overturned absent a clear abuse of discretion. Md. Rule 5-104(a) (stating that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court").

Evidence that a criminal defendant has committed another crime or other bad acts is generally not admissible in the absence of special relevance. According to Maryland Rule 5-404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

The Court of Appeals has opined that propensity evidence "tend[s] to confuse the jurors, predispose them to a belief in the defendant's guilt, or prejudice their minds against the defendant." *State v. Faulkner*, 314 Md. 630, 633 (1989) (internal citations omitted); *see also Streater v. State*, 352 Md. 800, 810 (1999) ("[T]he exclusion of other crimes evidence is ordinarily compelled because it is often too prejudicial and may interfere with a defendant's Sixth Amendment right to a fair trial") (internal citation omitted).

Preliminarily, we note that the only question to which defense counsel objected, and therefore, the only question that was properly preserved for appellate review was the State's query regarding whether the detective had previously seen appellant in the area around Gwyndale Avenue, to which the detective responded in the affirmative. *See* Md. Rule 4-323(a) ("An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived.").

Upon review, we are persuaded that the evidence elicited from the detective by the State was relevant under Maryland Rule 5-401. At appellant's trial the State introduced surveillance footage taken by a video camera on Gwyndale Avenue, on January 10, 2012, about fifteen minutes before the M&T Bank was robbed. The video depicted an individual who the State claimed was appellant, leaving the house identified as appellant's residence, wearing clothing similar to the clothing worn by the bank robber. The fact that the detective had personally observed appellant in the Gwyndale Avenue area, in the weeks immediately prior to the crime, living in the residence pictured in the surveillance video, was relevant in that it had some tendency to prove that appellant was the individual in the surveillance video. Further, if appellant was the individual in the surveillance video, as the State contended, that in turn, made it more likely that he was the individual, of a similar height and build and wearing similar clothing, who robbed the M&T bank only fifteen minutes later. Moreover, the presence of an investigator in the neighborhood helped to explain how the police

23

happened to have this video footage of appellant from the day of the robbery, which otherwise may have been confusing to the jury.

We further conclude that the testimony of the detective that defense counsel found objectionable did not implicate the Rule proscribing the admission of "other bad acts" evidence. Not only did appellant not object to how many times he had seen appellant in the area or to the time frame of the observations, the detective gave no details regarding why he was in the area of Gwyndale Avenue in the weeks prior to the robbery. Nor did he indicate the nature of any offenses that were being investigated or state that appellant was the target of the ongoing surveillance in the neighborhood. Nothing in the detective's testimony indicates, as appellant contends, that appellant was the person who had been "under investigation for weeks prior to the incident in question[.]"

We discern no error or abuse of discretion in the evidentiary rulings made by the trial court, but, even if we had, in light of the evidence before the jury, we would find it harmless. We shall, therefore, affirm the judgments of the court and appellant's convictions.

**CONVICTIONS AFFIRMED; SENTENCE FOR SECOND ROBBERY CONVICTION VACATED; CASE REMANDED FOR RESENTENCING ON THAT COUNT IN ACCORDANCE WITH THIS OPINION; COSTS TO BE EQUALLY DIVIDED BETWEEN APPELLANT AND BALTIMORE COUNTY.**

24